OF THE

## STATE OF MISSOURI

AT THE

### OCTOBER TERM, 1906.

*(Continued from Volume 202)*

## DICKEY v. PORTER et al., Appellants.

In Banc, March 30, 1907.

1. **TAXBILL: Assignment: Ownership.** Where defendants assert by way of new matter that plaintiff before the beginning of the suit assigned and delivered the taxbill sued on to a brokerage company, they are not in a position to insist on a general denial to the effect that he was never the owner of the taxbill, for if he assigned it he owned it, and an allegation that he assigned it is inconsistent with an assertion that he never owned it.

2. ——: ——: **Pledge: Real Party in Interest.** Where the owner of a taxbill has pledged it as collateral security for the payment of a note of less amount he owes a bank, he still has such an interest in it as entitles him to bring suit thereon to preserve and enforce the lien of the taxbill. Notwithstanding the pledge, the title does not pass to the pledgee, but still remains in the pledgor, subject to the pledgee's lien — just as in the case of a mortgage.

3. ——: ——: ——: ——: **Equity: Code.** The General Assembly, in creating the Code, and in providing for but one form of action, and in providing that that shall be prosecuted in the name of the real party in interest, in substance adopted the equity rule which had theretofore prevailed, that the assignee of an assigned instrument might sue in his own name, he being the real party in interest, and that the pledgor of a

(1)

pledged instrument being one of the real parties in interest (and being especially interested, for instance, in preserving and enforcing the lien of the pledged special taxbill), should at least be one of the parties plaintiff.

4. ——: ——: ——: ——: **Defect of Parties: Not Raised by Answer.** It is competent for both the pledgor and pledgee to join in a suit to preserve and enforce the lien of a special taxbill, but if the suit is brought by the pledgor alone, and the defect of parties does not appear on the face of the petition, it can be raised only by answer.

5. ——: ——: ——: ——: **Payment.** If between the time the suit is brought by both the pledgor and pledgee and the trial, the debt, to secure which the pledged special taxbill was held by the pledgee as collateral security, is paid, the pledgee is no longer a necessary party to an action to enforce the lien of the special taxbill, or to recover a judgment thereon if the lien has expired, and if the attention of the court is called to that fact the name of the pledgee should be stricken out.

6. ——: ——: ——: ——: **Pledgee Alone: Trustee.** The pledgee of a lien (for instance, a special taxbill) may bring suit in his own name to enforce the lien, but the extent of his recovery for himself will be the amount of the debt the pledgor owes him, and he will be a trustee for the pledgor for the overplus. But that does not mean that the pledgor, where he is the real party in interest, may not also bring the suit either alone, or by joining with the pledgee as plaintiff.

7. ——: **Payment to Wrong Party.** Under the charter of Kansas City, the owners of abutting property against which a special taxbill has been issued in payment of a sewer, can avoid all danger of paying the amount of the taxbill to the wrong party by paying it to the city treasurer.

8. ——: *Signed by President of Board.* A taxbill is not void because the signature of the president of the board of public works was signed by an officer designated for that purpose as provided in the charter. A reasonable construction of the charter does not require the president of the board with his own hand to do all the clerical work of making out special taxbills, but when they are issued by authority of the board and signed by its president by the party specially authorized by the resolution of the board to sign the president's name, all the substantial requirements of the charter are complied with. Such method of signature is only a method to attest the taxbill in the name of the president; it is not delegating to a clerk or other party the power to apportion the costs and assess each lot with its share and issue taxbills therefor.

9. ———: **Recitals: Total Area.** It is not essential that the tax-bill show on its face every prerequisite step necessary to its validity. It is not void because it does not contain a recital of the total area of the lands subject to the assessment, or any affirmative or general statement that the lands described in the taxbill were charged according to the area of such tract of land.

10. ———: **Assignment of Contract and Sub-Letting.** There is a palpable difference between assigning moneys due under a contract and an assignment of the contract itself. The borrowing of money from plaintiff by the contractor, and securing him for the loan by a contract assigning to him the special taxbills to be issued, and the employment by plaintiff of a competent engineer to see that the contractor carries out his contract with the city, is not an assignment of the contract to plaintiff, nor a subletting to him of the work.

11. ———: **Usurious Contract: New Defense.** A defense to the special taxbill not raised in the trial court will not be considered on appeal. Whether or not the contract between plaintiff and the contractor, by which plaintiff advanced to the contractor money to carry on the work, was usurious, will not be considered on appeal, if that defense to the taxbill was not made in the trial court.

12. ———: **Thickness of Sewer Pipe: Specifications in Ordinance.** Where the ordinance provided that the work should conform to the plans and specifications then on file in the office of the board of public works, those plans and specifications were as much a part of the ordinance as if they had been set forth therein in detail; and as the ordinance itself provided that all sewers of twenty-one inches or less in interior diameter should be constructed of vitrified clay pipe, and all sewers two feet or more in interior diameter should be constructed of hard burned brick laid in hydraulic cement mortar, and as the specifications and contract on file with the board specifically described the thickness of the pipes, it is obvious the dimensions of the sewer pipe were not left to the discretion of the city engineer, and the taxbills are not therefore void. And especially should this be the holding where neither the answer nor the instructions made the point that the thickness of the sewer pipe was not sufficiently designated, and defendants contented themselves to raising that point only by an objection to the introduction of the ordinance in evidence.

13. ———: **Sewer: Masonry.** Where it is impossible, on account of the hills and character of clay, etc., to definitely state the amount of rubble masonry that will be required for carrying the sewers, and for courts and side protections, the taxbills

are not void because of a failure of the ordinance to prescribe the length and quality of masonry required. If the quantity exceeds the estimates, the most the property-owners can demand is a credit on the taxbills for the excess; but if the amount is in substantial compliance with the contract, ordinance and charter, not even that credit should be allowed.

Appeal from Jackson Circuit Court.—*Hon. J. H. Slover,* Judge.

AFFIRMED.

*Elijah Robinson, Rozzelle, Vineyard & Thacher* and *R. H. Field* for appellants.

(1) On the facts, the right of foreclosure of the taxbill by suit was in the Pennsylvania Bank and not in Dickey, when this suit was begun, and for this reason the judgment must be reversed. Meyers v. Water Co., 10 Cal. 579; Wetmore v. San Francisco, 44 Id. 294; Fulton v. Swift, 84 Ind. 490; Reynolds v. Railroad, 143 Id. 619; Silleck v. Compress Co., 72 Miss. 1019; Griswold v. American Ins. Co., 1 Mo. App. 100; and see these and other authorities cited and quoted in the argument of this point, *post.* (2) The special taxbill sued on is void and the finding and judgment should have been for defendants, as asked in the declaration of law asked by defendants, because this bill was not made out and certified by the president of the board of public works, nor in his name by any person or persons by the board of public works thereunto specially authorized. Kansas City Charter, art. 9, sec. 15; Stifel v. Southern Cooperage Co., 38 Mo. App. 340; Young v. Carendon Township, 132 U. S. 349; see, also, other authorities cited and quoted, *post,* in argument of this point. (3) The city charter (sec. 10, art. 9) required the cost of district sewers to be computed and apportioned by the board of public works; also, that the board of public works "apportion and charge the same as a special tax

against the lots of land in the district, exclusive of the improvements, and in the proportion that their respective areas bear to the area of the whole district, exclusive of the streets," etc. The special taxbill sued on is therefore void, because neither it nor any proceeding of the board of public works recites: (1) The area of the lands in the sewer district; (2) the area of the land described in this taxbill; (3) that the land described in the taxbill was charged according to its area of the lands in the district, the principle or basis of the city charter provision; or, (4) that the sum charged in this special taxbill was apportioned and charged thereon, by the board of public works. Carroll v. Eaton, 2 Mo. App. 479; City of Linneus v. Locke, 25 Mo. App. 407. And these objections are not removed by the later recital in the taxbills: "And the sum mentioned has been duly assessed and proportioned against the lands, as provided by law." This statement in the taxbill is a mere conclusion of the official who issued the taxbill, and counts for naught as evidence that the board of public works itself made the assessment or made it according to the area of lands in the sewer district. Kansas City v. Railroad, 81 Mo. 296; Railroad v. Young, 96 Mo. 42; Yankee v. Thompson, 51 Mo. 238; and see other authorities in argument of this point, *post*. Nor can it be presumed that the board of public works apportioned and charged the cost of the work, nor that it did so, on the basis or principle authorized by the city charter, when no such action is recited in the special taxbill or other proceeding of the board of public works. The absence of such recital by the board of public works rather raises the presumption that the board of public works did not thus apportion the cost of the work nor at all. Smith v. Omaha, 49 Neb. 883; Cooly on Taxation (2 Ed.) 480-1; Kelly v. City of Chicago, 193 Ill. 324; Hall v. Kellogg, 16 Mich. 135; Pearsall v. Supervisors, 71 Mich. 438; Kansas City v. Railroad, 81 Mo. 296; Long v. Burnett, 13 Iowa 29.

Especially is there no presumption of unrecited official action as to a municipal board, like the board of public works, which is required to make and keep a record of all of its acts. Fruin-Bambrick Con. Co. v. Geist, 37 Mo. App. 515; sec. 15, art. 9, of Kansas City charter. (4) A recovery on the taxbill sued on was unauthorized because: the contract of Dickey with Ford, under which the work was done and the taxbills were procured by Dickey, was in effect a transfer of the contract of the city with Ford, or a subletting of the work embraced within it, by Ford to Dickey in violation of the city contract prohibiting any transfer of the contract or any subletting of the work. Hardy Co. v. Iron Works, 129 Mo. 222; Lansden v. McCarthy, 45 Mo. 106; Boykin v. Campbell, 9 Mo. App. 496; Deffendaugh v. Foster, 40 Ind. 384; Burke v. Taylor, 152 U. S. 634; Boston Ice Co. v. Potter, 123 Mass. 28; Smelting Co. v. Mining Co., 127 U. S. 379; Delaware Co. v. Safe, 133 U. S. 473; Light Co. v. Hampstead, 38 N. Y. App. Div. 353; Fortunato v. Patton, 147 N. Y. 282; 2 Am. and Eng. Ency. Law (2 Ed.), 1035. (5) If, as testified by plaintiff, and his witness, the Ford-Dickey contract was neither a transfer of the contract with the city nor a subletting of the work embraced therein, then it must be a mere mortgage or pledge of the taxbills by Ford to secure Dickey for the loans and materials he contracted to furnish him for the construction of the sewers, and as such mortgage or pledge is made void by our statute because of the usurious provisions of this contract, plaintiff should not recover on any view. R. S. 1899, sec. 3710; Keim v. Vette, 167 Mo. 403; Western Storage Co. v. Glassner, 169 Mo. 38; 29 Am. and Eng. Ency. Law (2 Ed.), 487-8; Morse v. Wilson, 4 T. R. 353; Weaver v. Burnett, 110 Iowa 567; Cobb v. Day, 106 Mo. 208. (6) The taxbill sued on is void because the dimensions, material and character of the sewers were not prescribed by ordinance. Kansas City Charter, sec. 10, art. 9; Dickey v. Holmes, 109

Mo. App. 721; Ludenberg v. Chicago, 183 Ill. 572; Coggeshall v. Des Moines, 78 Ia. 235; Rich Hill v. Donovan, 82 Mo. App. 386. (7) The court erred in ordering and adjudging that the amount of the judgment herein bear ten per cent per annum. R. S. 1899, sec. 3707; St. Louis v. Allen, 53 Mo. 57; Plum v. City, 101 Mo. 525.

*Clarence S. Palmer* and *Karnes, New & Krauthoff* for respondent.

(1) With respect to the first point made by appellants, the record discloses the following: (a) The taxbill sued on was issued November 30, 1896. (b) The action was instituted May 28, 1901. (c) The taxbill bore interest at the rate of ten per cent per annum from date of issue. Charter of Kansas City, p. 163, sec. 23. The taxbill was payable in installments; and if the installments had been promptly paid, the rate of interest would have been seven per cent. Default was made, however, in all of the installments, and hence under the provisions of the charter cited the taxbill bore ten per cent interest. (d) Accordingly, at the bringing of the action, the amount due on the taxbill was the face of the taxbill, $9,787.95, together with interest from November 30, 1896, to May 28, 1901, at ten per cent per annum, or $4,404.57, a total of $14,192.52. (e) The note executed by Dickey and which is the basis of defendants' contention, was dated February 11, 1901; was due six months after date, August 11-14, 1901, and bore no interest until maturity. (f) Dickey was personally liable for the payment of this note, and in any event, on the payment of the note was entitled to a return of the taxbill. In no phase of the case was the bank in Pennsylvania entitled to more than the face of the note, that is, $12,500; and the difference between $12,500 and $14,192.52, the amount due on the taxbill, together with accrued interest at the beginning of the suit, was clearly the property of

Dickey. (g) The note executed by Dickey was paid when due. The contention of appellants is predicated of Revised Statutes 1899, section 540: "Every action shall be prosecuted in the name of the real party in interest." This section of the statute must be read in connection with Revised Statutes 1899, section 542: "All persons having an interest in the subject of the action, and obtaining the relief demanded, may be joined as plaintiffs, except as otherwise provided in this article." Fisher v. Patton, 134 Mo. 54. Assuming, for the purpose of argument, that Dickey had pledged the taxbill as collateral security for a loan, the record shows that the note for which the taxbill may have been pledged was not due when this action was instituted, and that no default ever occurred in the payment of the note. The pledgor remains the owner of the pledged property, and in the event that the pledgee disposes of the same in an invalid manner, the pledgor may have an action for conversion. Greer v. Bank, 128 Mo. 559; Bank v. Richardson, 156 Mo. 270; Richardson v. Ashby, 132 Mo. 238; Hagan v. Bank, 182 Mo. 319. "In the case of a pledge, the title does not pass to the pledgee, but remains in the pledgor." Conrad v. Fisher, 37 Mo. App. 403; Van Idour v. Nelson, 60 Mo. App. 523. The right of plaintiff to maintain the action is illustrated by the case of Matthews v. Railroad, 142 Mo. 658. Dickey and the bank, having joined as parties plaintiff, and it appearing on the trial that the interest of the bank had then ceased, the name of the bank would have been stricken out as a party plaintiff. R. S. 1899, sec. 657; Ins. Co. v. Railroad, 74 Mo. App. 74; Hoagland v. Vanetten, 35 N. W. 869, 22 Neb. 681; Bank v. Hayes, 112 Cal. 75. (2) (a) In Missouri, it is well settled that a blank endorsement of paper not negotiable is a mere authority to the holder to fill it up; until this is done, the legal title remains in the payee. Taylor v. Larkin, 12 Mo. 105; Wiggins v. Rector's Executor, 1 Mo. 478;

Menard v. Wilkinson, 2 Mo. 92. (b) If it be claimed that the endorsement on the back of the taxbill operated as a mortgage of the taxbill, the same defect obtains. The very essence of a mortgage is an assignment of a chose in action for the payment of a debt, and unless there is a valid assignment, completely executed, there can be no valid mortgage. But, as hereinafter shown, if the endorsement operated as a mortgage, then, as against everybody except the mortgagee, the mortgagor remains the owner of the taxbill. Benton Land Co. v. Zeitler, 182 Mo. 267; Adams v. Shirk, 117 Fed. 805. (c) If it be claimed that in some manner the taxbill in question was pledged to the bank in Pennsylvania, then as to this phase of the case, there is a total failure of pleading and of proof. The most that can be said of the answer, so far as this phase of the case is concerned, is that the answer pleads that the Abell Company "delivered" the taxbill to the bank in Pennsylvania, and "said bank accepted, held and retained same exclusively within its possession and as the holder thereof for value until on or about August 14, 1901." The answer does not plead the essential elements of a pledge, but merely a delivery of the taxbill. A delivery of the taxbill, without more, would not constitute the bank in Pennsylvania anything except a mere bailee for the real owner of the bill. So far as the allegation "as a holder thereof for value" is concerned, this is a mere conclusion of law and does not present a traversable issue of fact. Without a delivery there can be no valid pledge. Christian v. Railroad, 133 U. S. 233; 18 Am. and Eng. Ency. Law (1 Ed.), 595, 597; Conrad v. Fisher, 37 Mo. App. 352; Vanstone v. Goodwin, 42 Mo. App. 39; Staples v. Sampson's Admr., 60 Mo. App. 73; Casey v. Cavaroc, 96 U. S. 467. Again, the cases show that the pledgor remains the owner of the property, but in the event that the pledgee disposes of the same in an invalid manner, the pledgor has an action

for conversion. Greer v. Bank, 128 Mo. 559; Bank v. Richardson, 156 Mo. 270; Richardson v. Ashby, 132 Mo. 238; Hagan v. Bank, 182 Mo. 319. It has also been decided by this court that one who holds a demand partly in his own right and partly in the right and for the benefit of another is, as to the other, the trustee of an express trust. Phillips v. Laclede County, 76 Mo. 68.

GANTT, J.—This is an action begun in the circuit court of Jackson county, by the plaintiff, against James B. Porter and Tellie D. Porter, his wife, to enforce a certain taxbill issued on the 30th of November, 1896, and numbered 851, by the board of public works of Kansas City, in part payment for the construction of a certain sewer in said city, as provided by ordinance number 7109 of the said city, approved January 11, 1896, against certain real estate therein described. The said taxbill was payable in four equal installments of twenty-four hundred forty-six dollars and ninety-eight and three-fourths cents each. Judgment was obtained in the circuit court of Jackson county and the defendants appealed to this court.

Since the appeal was lodged in this court, one of the appellants has died, leaving as his sole heirs at law, his widow Tellie D. Porter and his three children, Jesse Lee Porter, James Burrel Porter and Emily Hall Porter. J. Lee Porter, a brother of the deceased, has been appointed and is the duly qualified and acting administrator of his estate. Proper steps have been taken in this court to revive the action against the widow and heirs and administrator of James B. Porter, deceased.

The petition in substance states that the defendants are the owners of the real estate described in the petition as a part of the southeast quarter of the northeast quarter of section 17, township 49, range 33, and particularly described by metes and bounds,

and it is alleged that the same is now platted as lots one, two, three, and lots eight to fourteen inclusive, in block two, and all of blocks three, four and five and the west half of block six, Creston; that said taxbill was issued by the board of public works on November 30, 1896, and numbered 851, against said described real estate in part payment for constructing district sewer in sewer district number 59, as provided by ordinance 7109 of Kansas City, Missouri, entitled an ordinance to construct district sewer in sewer district 59, approved January 16, 1896; that it appears from said taxbill and plaintiff states the fact to be that said work was completed according to contract by E. N. Ford, contractor, to whom this special taxbill was issued in part payment therefor, and the sum mentioned has been duly assessed and proportioned against the aforesaid land, being the exact amount chargeable against said land; that said taxbill is payable in four equal installments of twenty-four hundred and forty-six dollars and ninety-eight and three-fourths cents each, on presentation of the three installment coupons thereto attached at maturity thereof, the fourth and last installment of twenty-four hundred forty six dollars and ninety-eight and three-fourths cents, being payable on the 31st day of May, 1900, with interest thereon as herein mentioned, on the surrender and cancellation of said taxbill. And it is further provided that said taxbill shall bear interest from the date of the issue thereof at the rate of seven per cent per annum, and when any installment shall become due and collectible, as therein provided, interest thereon and on all unpaid installments shall be due and collectible to that date. It is further provided in said bill that if any installment of said taxbill or interest thereon be not paid when due, then all the remaining installments shall become due and collectible, together with the interest thereon, at the rate of ten per cent per annum from the date of issue of

said taxbill, less the sum of any interest that may have been already paid on such installment. It is alleged that the defendants have failed and refused to pay any part or portion of said taxbill or of any of the installments thereon, and that the same, and each and all of the installments thereof, are due and payable with interest at the rate of ten per cent per annum from November 30, 1896. That said taxbill had been assigned by the said E. N. Ford, contractor, to the plaintiff.

Plaintiff prayed judgment for the amount of said taxbills $9,787.95, with interest from October 30, 1896, at ten per cent, and costs, and for the enforcement thereof against the real estate aforesaid. Attached to said petition was what purported to be the said taxbill numbered 851, with the three installment coupons attached thereto, and endorsed: "Kansas City special taxbill, issued on the installment plan for constructing district sewer in sewer district number 59. Registered. Number 851. For $9,787.95. Volume 37, page 112 in said Engineer's office."

On June 30, 1902, the defendants James B. Porter and Tellie Porter filed their amended answer, wherein they admitted, first, that they were the owners of the real estate described in the petition and situated in Kansas City, Missouri, but deny each and every other allegation in the petition.

Second. Defendants further answering say that at the time of the commencement of this action plaintiff was not the real party in interest in the pretended taxbill No. 851 issued under the pretended ordinance of Kansas City, No. 7109, for that on or about February 11, 1901, plaintiff, for value, assigned, set over and delivered same to Abel Bond & Brokerage Company, which, in turn, delivered same to Union National Bank of Mahoney City, Pennsylvania, and said bank accepted, held and retained same exclusively within its possession, and as a holder thereof for

value, until on or about August 14, 1901, and long after the commencement of this action.

Third.    Defendants for further answer to the petition state that the alleged taxbill mentioned in the plaintiff's petition is null and void, and plaintiff is not entitled to the relief sought by him for the following reasons:

1.    That the dimensions, material and character of said district sewer were not prescribed by the ordinance of Kansas City, No. 7109, which pretended to provide for the construction of said sewer, but in respect to the portions of said sewer to be constructed of sewer pipe and length and quality of masonry required to support the brick portion, the same was left wholly to the discretion of the city engineer of Kansas City, and whatever material and work of that character were put into said sewer, the dimensions and quality thereof, were fixed and determined by said city engineer and his assistants, and not otherwise.

2.    That the board of public works of Kansas City, Missouri, did not compute the whole cost of said sewer, nor of any part thereof.

3.    That said ordinance No. 7109, which pretended to provide for the construction of said sewer, was void in that it did not specify any time within which said work was required to be completed.

4.    That the contract under which said Ford pretended to perform said work and upon which the pretended taxbill sued upon herein is based was null and void, for that the performance of said contract was not guaranteed by two or more securities signing said contract as required by the Revised Ordinances of Kansas City No. 41982, approved May 12, 1888, and the city charter of said city, all then in force and governing the execution of said contract.

5.    That said pretended contract, if valid, which defendants deny, took effect and bound said Ford on and after March 26th, 1896, on which day an ordinance

pretending to confirm said contract was passed by the common council of Kansas City and approved by the mayor; that said contract contained the following, among other stipulations and agreements:

"The work embraced in this contract shall be begun within ten days after this contract binds and takes effect, and shall be prosecuted regularly and uninterruptedly thereafter (unless the engineer shall specially direct otherwise in writing), with such force as to secure its full completion within one hundred and eighty days from the date of its confirmation; the time of beginning, rate of progress and time of completion being essential conditions of this contract. And if the contractor shall fail to complete the work within the time above specified, an amount equal to the sum of ten dollars per day for each and every day thereafter, until such completion, shall be deducted as liquidated damages for such breach of this contract from the amount of the final estimate of said work."

That the time for the completion of said work expired September 22, 1896, and was not extended. That this work was not completed until long thereafter, to-wit, on or about November 15, 1896. That by a certain ordinance of the City of Kansas, No. 41982, approved May 12, 1888, being Revised Ordinances of the City of Kansas of 1888, and by section 921 thereof, it was enacted:

"Sec. 921. Whenever any ordinance shall provide for the construction of any public sewer, district sewer, drain or culvert, the same shall, unless therein otherwise especially provided, be deemed and taken to require that all excavation and materials necesary for the work shall be done and furnished by the contractor or contractors; that all necessary laterals, inlets and other appurtenances shall be constructed, and that, after the work of constructing the sewer proper shall be completed, the excavation over and around the same shall be filled in with earth or stone by the con-

tractor or contractors, all as a part of the work, so as to protect the same and leave the surface of streets, avenues, alleys, lots and other places over the same level and safe and in as good condition as before the work was commenced.''

And by said contract it further stipulated that: ''This contract is entered into subject to the approval or rejection of the common council, and shall not bind until so approved, and is subject to the city charter and ordinances in general, and in particular to the provisions of chapter 46, Revised Ordinances, which chapter is made part of this contract.''

But, in violation of said stipulation and general ordinances, on September 22, 1896, the excavation over and around said sewer had not been filled with earth by said contractor, and said sewer was not on said date protected, and the surface of streets, avenues, alleys and the lots of ground through and under which said sewer was constructed had not on said day been left level and safe and in as good condition as before work was commenced.

6. That the pretended taxbill mentioned in the petition herein was never delivered to E. N. Ford, the contractor and party in whose favor said taxbill was made out for collection, and the receipt of said Ford was not taken at the foot of the taxbill register in full of his claim, if any, against the city, as required by law.

7. That by said ordinance of the City of Kansas, No. 41982, and section 922 thereof, it was provided:

''Sec. 922. Unless the ordinance for causing a public sewer, district sewer, drain or culvert to be constructed otherwise provide, the city engineer shall advertise for bids for doing the work in the official newspaper of the city, for the same length of time and in the same manner as may be provided by ordinance for advertising for bids for grading streets or avenues.''

That said ordinance No. 7109 did not "otherwise provide."

That the ordinance relative to the advertising for bids for grading streets or avenues was said ordinance of the City of Kansas, No. 41982, and section 990 was as follows:

"Sec. 990. When any ordinance shall provide for the doing of any work mentioned in the first section of article VIII of the City Charter, the city engineer shall, as soon as practicable thereafter, make out the necessary plans and specifications, which shall, in cases where the contract must be let to the lowest and best bidder, prescribe a time within which the work shall be finished, and the amount of security to be given by the contractor for the performance of the work. As soon as practicable thereafter, and after taking other requisite preliminary steps, in case a contract is to be let to the lowest and best bidder, the city engineer shall cause to be published, for ten successive days, within twenty days next preceding the time for opening bids, in the newspaper doing the city printing, or, if there be none, in such daily newspaper, published in the city, as he may select, a notice of the letting of the contract for such work to the lowest and best bidder. Such notice shall state generally the nature of the work to be done, where the plans and specifications thereof may be seen, and the day when bids will be open."

That no notice of the letting of the contract under said Ordinance No. 7109 to the lowest and best bidder was published, and that no advertisement was ever published giving a description of the work to be done, and the materials, dimensions and character of same, and plans and specifications for such work were not made out, nor was the time for finishing the work and the amount of the security to be given by the contractor fixed prior to the pretended letting of said work.

8. That by said ordinance of the City of Kansas, No. 41982, and section 924 thereof, it was provided:

"Sec. 924. Before advertising for bids for doing any of the work mentioned in the first section of this chapter, the city engineer shall make out detailed plans and specifications for the work to be done, and keep the same on file in his office for information of all desiring to bid on the work."

That said "first section of this chapter" is section 921 of Ordinance 41982 of the City of Kansas, heretofore set out.

That the city engineer of Kansas City pretended to advertise for bids for said sewer without first having made out detailed plans and specifications for the work to be done.

9. That said pretended taxbill embraced the cost of large quantities of stone, masonry, granitoid, rock, excavation, earth embankment, lumber and drain pipe, none of which materials were required to be furnished and none of which work was required to be done by the pretended Ordinance No. 7109.

10. That said contract contains this further stipulation, to-wit: "The first party shall not assign nor transfer this contract, nor sublet any of the work embraced in it."

That prior to the commencement of the work under said pretended contract, and prior to the making of any final estimate of the cost thereof, the contract or pretended contract with said Ford for the doing of said work and the rights of said Ford thereunder, were assigned and transferred in violation of the terms and provisions of said contract, and said contract was thereafter of no validity.

11. That the pretended taxbill sued upon herein was not made out and certified by the president of the board of public works nor in his name by any person,

or persons, thereunto specially authorized by said board.

12. Defendants state that the lien of the pretended taxbill, if any ever existed, has long since expired, and that said taxbill has ceased to be a lien upon the real estate therein, and in plaintiff's petition described; that defendants state that no notice of the bringing of this suit has ever been filed with the city treasurer of Kansas City, Missouri, showing the taxbill sued on herein, and when and in what court, and against whom this action was brought, and that no notice whatever of the bringing of said suit has been filed with the city treasurer of Kansas City, Missouri.

13. That at the time of the letting of the contract for said sewer, and until long after November 30, 1896, one George J. Baer was a member of the board of public works of Kansas City, and, notwithstanding said membership, was interested in said contract and in the furnishing of materials and labor for the construction of said sewer, and the profit arising therefrom.

Wherefore, having fully answered, defendants pray to be dismissed with their costs.

In due time plaintiff filed a reply denying all the new matter alleged in the answer. The jury was waived and the cause was tried to the court and on the second day of August, 1902, judgment was rendered for the plaintiff and a lien decreed upon the said real estate for the enforcement thereof and special execution directed as required by law. In due time the defendants filed their motions for a new trial and in arrest of judgment, which were overruled. At the October term, 1902, an appeal was allowed to this court. Various assignments of error are urged for the reversal of the judgment, and they will be considered in the order of defendants' brief.

I. The dominant question in this case and the one to which the respective counsel have devoted the most

of their time in the discussion, is whether the plaintiff was the real party in interest in the taxbill sued on, at the commencement of the action on May 28th, 1901, and therefore authorized to maintain the suit. This issue is presented in a double aspect. First, by the denial in the answer of the allegation in the petition that "said taxbill has been assigned by the said E. N. Ford, contractor, to the plaintiff Dickey," and, second, by the affirmative defense "that at the time of the commencement of this action plaintiff was not the real party in interest in the pretended taxbill No. 861, issued under the pretended ordinance of Kansas City No. 7109, for that on or about February 11, 1901, plaintiff for value assigned, set over and delivered the same to Abel Bond & Brokerage Company, which, in turn, delivered the same to the Union National Bank of Mahoney City, Pennsylvania, and said bank accepted, held and retained the same exclusively within its possession and as a holder thereof for value until on or about August 14, 1901, and long after the commencement of this action."

As to the first of these contentions, it is sufficient to say that on the trial the plaintiff introduced in evidence a written contract between the contractor, Ford, and the plaintiff, Dickey, of date March 12, 1896, whereby Ford agreed, for value received and to be received by him of Dickey, the plaintiff herein, that, when said taxbill should be issued, said Ford should at once assign and transfer to such person as said Dickey might name, all the taxbills which should be issued under the said contract and ordinance, which assignment was to be executed concurrently with said contract and filed in the proper office, and the evidence further discloses that Ford, in pursuance of that contract, executed a power of attorney to Henry Millson to receive and receipt for the said special taxbills and also assigned and transferred the same to said Millson on the thirteenth of March, 1896, and that Millson on

the sixteenth of March, 1896, assigned all the rights, interests and powers in said instruments to the plaintiff, Dickey, and by virtue of these instruments the taxbills were delivered to Dickey. The defendants asked no instructions of the court, or any declaration of law, that the evidence of the assignment by Ford to Dickey was not sufficient to convey the title in the taxbills to the plaintiff. But for another reason, we do not think that the defendants are in a position to assert that the plaintiff did not acquire the ownership of the taxbills as between Ford, the original contractor, and the plaintiff Dickey, for the reason that the defendants themselves in the new matter alleged in their answer as to why plaintiff was not the real party in interest, state that plaintiff did before the bringing of this action, to-wit, about February 11, 1901, for value assign, set over and deliver the said taxbill to the Abel Bond & Brokerage Company, which, in turn, delivered it to the Pennsylvania bank. In a word, this defense stands upon a plea that at the time the suit was brought, the bank in Pennsylvania was the owner of the taxbills and the owner thereof for value. This affirmative defense is entirely inconsistent with the claim now advanced under the general denial that Dickey never owned the taxbill, but is a plain argument that in fact he did own it, but had assigned it to the bank in Pennsylvania prior to the bringing of this suit. Elsewhere in the answer the defendants pleaded that Ford, the original contractor, assigned and transferred the contract for the doing of said work and the rights of said Ford thereunder to the plaintiff, Dickey, one of which rights was that to the bills to be issued under the contract. We need not, therefore, devote further time as to the allegation that Ford assigned the taxbill in suit to the plaintiff. That was a question of fact, and there was ample evidence to support the finding of the court thereon.

The other proposition, to-wit, that Dickey, the

plaintiff, was not the real party in interest at the time of the bringing of this suit, for the reason that the taxbill sued on had been assigned or pledged as a security for Dickey's note for $12,500, executed February 12, 1901, and due six months after date, requires consideration. This defense is purely technical. Conceding for the nonce that there was sufficient evidence to have authorized the court to have found that the Bank of Mahoney did receive and have in its possession the identical taxbill, upon which this action is being maintained, by way of a pledge or collateral security, it is clear that at most it was only an equitable assignment or pledge of the taxbill to secure a less sum evidenced by plaintiff's note to the Mahoney Bank. Under this state of facts, the great weight of authority in this country is that where the owner of a mortgage has pledged it as collateral security for a debt of less amount than the mortgage, he still has such an interest in it as entitled him to bring an action for the foreclosure of the mortgage. Vice-Chancellor McCoun held, in Norton v. Warner, 3 Edwd. Chcy. (N. Y.) 106, in such a case, that "complainant had not divested himself of all interest in or control over the mortgage. The assignment is but a partial one, made to secure to the pledgee the payment of the loan, being less than the amount due on the mortgage. In equity, he is still the owner, subject only to the lien or pledge for the loan. The pledgee might have filed a bill of foreclosure against the original mortgagor and all parties in interest, and in that case the pledgee would have been deemed a trustee for the mortgagee for the whole mortgage debt after satisfying his claim."

No substantial difference can exist between the relation of a mortgagee who has pledged his mortgage for a less debt of his own, and the owner of a taxbill lien who pledges the same as plaintiff did the taxbill in this case to the Pennsylvania bank. The doctrine announced in Norton v. Warner, supra, has been re-

peatedly followed in New York. In Ridgway v. Bacon, 72 Hun 1. c. 214, it was said:. "The fact that Smith holds or claims to hold the note and assignment as collateral to some promise or liability of Muller is not a good defense in favor of Bacon. It has long been settled that one who has assigned a lien as collateral security may, if he have an existing interest in it, maintain an action for its enforcement, and that the assignee is a necessary party to such an action." [Simson v. Satterlee, 6 Hun 305; Ibid v. Ibid, 64 N. Y. 657; Burlingame v. Parce, 12 Hun 149.]

These cases but announce the law as stated in the 22 Am. & Eng. Ency. Law (2 Ed.), 864: "A contract of pledge, although it confers upon the pledgee the title in the sense that he is entitled to maintain trover or replevin against a stranger, does not divest the pledgor of the general property in the thing pledged, and notwithstanding such contract the pledgor has title to the property subject to the pledgee's lien." [Thompson v. Dolliver, 132 Mass. 1. c. 104; Williams v. Rorer, 7 Mo. 558; Brewster v. Hartley, 37 Cal. 25.] Story on Bailments (4 Ed.), page 311, section 308, says that, "Under the common law the right to sell the pledge results from the default of the pledgor in complying with his engagement.    Such a right does not divest the general property of the pawnor, but still leaves him a right of redemption."    It is well settled that upon the pledgor's default, the property and the thing pledged does not become absolutely vested in the pledgee and the general property still remains in the pledgor.    [22 Am. and Eng. Ency. Law (2 Ed.), 865, and cases cited.]    In Conrad v. Fisher, 37 Mo. App. 1. c. 403, it is said: "In the case of a pledge, the title does not pass to the pledgee, but remains in the pledgor. . . . . The pledgee, therefore, is not the owner, but the mere holder of a possessory lien."    In Richardson v. Ashby, 132 Mo. 245, this court said: "Non-payment of the original debt at the

stipulated time does not work a forfeiture of the pledge, either by the civil or at the common law. No title to or ownership in the collateral by forfeiture inures to the benefit of the pledgee by the maturity of the debt or by the lapse of time. . . . . Title or ownership of the pledge, when the subject of it consists of ordinary goods and chattels, remains in the pledgor; the pledgee taking only a lien on it, as security for his debt.'' In that case, this court, in speaking of the relation of the pledgee to negotiable commercial paper, said: ''The peculiar character of the paper gives the pledgee an apparent absolute ownership in, and right of disposition over, the pledge, and in fact the absolute right and power, so far as third persons taking the same are concerned, without a knowledge of the relation of the pledgee to the collateral.'' But in this case, as already said, the subject of the pledge is a special taxbill, and such taxbills are not negotiable instruments, but mere choses in action. [Young v. Brewster, 62 Mo. App. 632; see, also, Southworth Company v. Lamb, 82 Mo. 249.]

Numerous cases decided by this court in which the assignee of promissory notes, of which there is an unconditional assignment, is held to be a trustee of an express trust and also the real party in interest, do not solve the contention in this case, for the reason that in this case, there is no absolute assignment of the taxbill by the plaintiff to the bank in Pennsylvania, or to anyone else, but a mere pledge of the security to secure a debt of the plaintiff of less amount than that for which the taxbill was a lien. From the foregoing we deduce these propositions: first, that at the time of the commencement of this action the plaintiff had not divested himself of all interest in or control over the taxbill in suit, but had simply pledged it as a collateral security for his note to the bank for a less sum, and as there had been no default in the payment of his note to the bank, his general property in

the taxbill had not been divested, but he still had title thereto subject only to the pledgee's lien, and as he still had a present existing interest in it and indeed, it may be said, the principal interest in preserving the lien of the taxbill, he had a right to maintain this action to preserve and enforce the lien of the taxbill. Respectable authorities might be cited to show that in this condition of affairs both the plaintiff and the bank might have joined in this action to enforce the lien of the taxbill, but that the plaintiff was a party in interest, who might, in his own behalf, bring this suit, in view of the authorities above cited, it seems to us there ought not to be any question. Inasmuch as the note of plaintiff to the bank matured on the 14th of August, 1901, and was paid on that date, when the case came on for trial the bank's interest had entirely disappeared on account of the payment of its note, the bank's name would have been stricken out of the petition when the attention of the court was called to that fact, and no good reason can be assigned why the plaintiff might not then have proceeded to judgment for the whole amount of the taxbill and interest.

But it is said that this right of the plaintiff to sue and preserve his lien of the taxbill in suit, is purely an equitable right, and that this is not a suit in equity. Keeping in view now that we are discussing the proposition whether the plaintiff is the real party in interest under our statute, section 540, Revised Statutes 1899, which requires, "Every action shall be prosecuted in the name of the real party in interest," the reasons which actuated the Legislature in making this provision as to parties, must be kept in view. At the time this section was adopted, the Legislature also adopted section 539, which provides, "There shall be in this State but one form of action for the enforcement or protection of private rights, and redress or prevention of private wrongs, which shall be denominated a civil action." It was entirely competent for

the Legislature to have retained either the common
law rules in regard to parties to actions thereafter in-
stituted, or to have adopted the rules of the chancery
courts as to the proper parties to a suit.  But as the
old forms of actions were abolished, and one civil ac-
tion substituted in their stead, it was deemed neces-
sary to provide as to the parties to this new action,
and by providing that the action should be prosecuted
in the name of the real party in interest, the Legisla-
ture in substance adopted the rule as to parties, which
had theretofore prevailed in the courts of equity.  At
common law, the assignee of a cause of action could
bring an action thereon only in the name of his as-
signor, while in equity the assignee must sue in his own
name.  Under our code the assignee is the real party
in interest, and as such, must prosecute in his own
name.  If it be said that a mortgagee, who has as-
signed his mortgage as a security or pledge for a loan
of less amount than the mortgage, could only foreclose
in his own name in equity, still as the authorities all
agree that the pledgor in such circumstances is still
a real party in interest and the statute requires the
action to be brought in the name of the real party in
interest, how can it be said that he may not bring his
action to enforce the lien of a taxbill in a court of law
under the code as well as in a court of equity?  If we
are to look at the substance of things and not mere
forms, we can see no reason why the plaintiff in this
case who, of all other persons, was most vitally inter-
ested in the preservation and enforcement of this lien,
should not have been allowed to prosecute and main-
tain this action.

Again, that it would have been competent for the
plaintiff and the bank to have joined in the bringing
of this suit, there can be no doubt, and the failure to
join the bank could at most have only been a defect
of parties plaintiff, and as that fact did not appear
upon the face of the petition, it could have been taken

advantage of by an answer, but the answer in this case does not ask nor demand that the bank of Mahoney should be made a party, plaintiff or defendant, in this action, and indeed when the answer was filed on the 30th of June, 1902, the bank was not a necessary party to the action, because on the 14th of August, 1901, it had received full payment of its note from the plaintiff and no longer held the taxbill in pledge. In nothing that we have said are we to be understood as holding that the pledgee of a lien may not bring a suit in his own name, for the authorities are ample that he may do so, though the extent of his recovery for himself will be the amount of the debt which the pledgor owed him, and he would be the trustee for the pledgor for the overplus. Likewise, it has been ruled that where the pledgor recovers dividends or interests or other accretions to the lien, he will be adjudged to hold the same in trust for the pledgee until the latter's debt is satisfied.

As this case presents a question out of the ordinary, it is essential that we keep in view the identical questions of law involved. By this action the plaintiff is seeking to preserve and enforce the lien of a taxbill in which he is vitally interested as the general owner thereof, and as the owner of as much thereof as exceeds the amount of his note to the bank in Pennsylvania, and as the pledgor of the security pledged by him to the bank for the benefit of the bank, and not to deprive the bank in any manner of the benefit of the pledge, but to preserve it so that in case of his default in the payment of his note the lien would inure to the benefit of the bank. Judge BLISS in his work on Code Pleading (3 Ed.), note to section 45, says: "This raises the question, 'who is the real party in interest?' The real party in interest is the party who is to be benefited or injured by the judgment in the case." Black, in his Law Dictionary, page 997, defines the real party in interest within the mean-

ing of this statute as follows: ''In statutes requiring
suis to be brought in the name of the real party in
interest, this term means the person who is actually
and substantially interested in the subject-matter as
distinguished from one who has only a nominal, formal
or technical interest in it, or connection with it.'' By
his note to the bank, the plaintiff became absolutely
indebted to the bank whether the lien was valid and
enforcible or not. If he had permitted the statute of
limitation to run and the taxbill should thereby have
become valueless as a security, his obligation to the
bank would have still remained absolute. The bank
was taking no step to enforce the lien, and having
brought this suit, it is obvious that it was the plaintiff
who was to be benefited or injured by the judgment
rendered in this case. The general title to the taxbill
remained in the plaintiff at the date of the commence-
ment of the suit, subject only to the lien of the bank.
In McKinster v. Bank of Utica, 9 Wend. 46, it ap-
peared that McKinster held a note executed by one
Dann, and endorsed by Sprague and Dygert, and be-
ing indebted to one Pardee, McKinster delivered the
note of Dann to Pardee as collateral security, and
Pardee was authorized to receive the money and apply
the same on McKinster's debt to him. Pardee left the
note at the bank for collection; the note having become
due and notice of non-payment not having been given
to the endorsers, Pardee took the note from the bank
and demanded payment of McKinster, who paid him
the amount thereof, and the note was delivered to
McKinster. The maker and the endorsers having be-
come insolvent, McKinster sued the bank on account
of its failure to notify the endorsers so as to hold
them for the amount of the note. The question in the
case was whether the action was properly brought in
the name of McKinster. The bank claimed that its
contract, whatever it was, was with Pardee, the holder
of the note as collateral security, and that the action

should have been brought in Pardee's name, and not in the name of McKinster. Upon this state of the case, the Supreme Court of New York, through Judge SUTHERLAND, said: "McKinster was the only person legally interested in having the endorsers duly charged; he was absolutely bound to pay the amount of this note to Pardee, if the note itself was not paid at maturity. The property of the note was not vested in Pardee; he held it as collateral security only, to be returned if not paid. The undertaking of the defendants to give notice to the endorsers of the non-payment of the note by the maker, was for the benefit of the plaintiff McKinster. The legal interest in such contract was in him alone, and even an action of assumpsit not only might, but should have been brought in his name." So in this case, while the taxbill had been pledged without any legal assignment thereof to the bank, the plaintiff remained the owner of the taxbill and was more vitally interested in preserving and enforcing the lien of the taxbill than anyone else as he was absolutely bound to pay his note to the bank whether the taxbill could be collected or not. Under these circumstances, without infringing in any manner upon the right of the bank to have brought the action in its own name for the benefit of itself, and as trustee for the plaintiff, we think the plaintiff was the real party in interest and authorized to bring suit to enforce the lien of the taxbill.

But if it be said that if we affirm the judgment in favor of the plaintiff, the defendants may be subjected twice to the payment of this taxbill, we answer, that it appeared by the proofs that the pledgee, the bank in Pennsylvania, has no longer any interest in the taxbill, because plaintiff paid his note to the bank on the 14th of August, 1901, long before the answer of the defendants, upon which this case was tried, was filed. And, moreover, the lien of the taxbill itself has long since expired and no one else can now bring an

action thereon. By section 17 of article 9 of the charter of Kansas City, the defendants could have avoided all danger of paying it to the wrong person by paying the amount of the taxbill to the city treasurer, as the charter expressly provides: "The person to whom any such taxbill may be issued or the assignee thereof, shall be entitled to receive the money so paid to the city treasurer on the delivery to the city auditor of such special taxbill duly receipted in full." In the case at bar, the taxbill was produced on the trial in the possession of the plaintiff and stands merged in the judgment, and the judgment itself can be paid in the office of the city treasurer.

II. It is next insisted that, inasmuch as section 15 of article 9 of the charter of Kansas City provides: "All special taxbills provided for by this charter, shall be made out and certified by the president of the board of public works, or in his name by any person or persons thereunto specially authorized by resolution in writing and recorded on the books to be kept by such board of public works and signed by the president of the board," the taxbill in this case is utterly null and void because the testimony shows that the board of public works made the order provided in this section of the charter whereby Marcus E. Getchell, chief clerk in the office of the city engineer, was "authorized to make out and certify in the name of George S. Graham, president of the board of public works, all special taxbills," and that Marcus E. Getchell did not make out the whole taxbill, and that one W. T. Cheever wrote the name of George S. Graham, and that the only thing done by Getchell was to write his own name thereunder. The taxbill on its face shows it was signed by 'Geo. S. Graham, president, by Marcus E. Getchell.' When the taxbill was offered in evidence, the objection was "it was incompetent because it has not been filled as required by the charter, and because there is no evidence of the as-

signment to plaintiff, which objections were overruled and the defendants duly excepted,'' so that the objection now urged was not made at the time the taxbill was offered. But aside from this, in Jaicks v. Merrill, 201 Mo. 91, this identical proposition came before this court, and we held that the contention of counsel that the taxbills were void because the signature of the president of the board of public works was signed by an officer designated for that purpose as provided in the charter, was not tenable. And we see no reason for departing from the ruling made in that case. A reasonable construction of the charter does not require the president of the board of public works, with his own hand, to do all the clerical work of making out these special taxbills, but when they are issued, as these were, by authority of the board of public works, and signed by its president by the party specially authorized by the resolution of the board, all the substantial requirements of the charter are complied with. The decisions of this court in City of Nevada to use v. Eddy, 123 Mo. 1. c. 563, and City of Sedalia to use v. Donohue, 190 Mo. 407, in no manner conflict with this conclusion. In those cases it was ruled that the city council could not delegate to the city clerk the power to apportion the costs and assess each lot with its share and issue taxbills therefor. No such power was attempted to be delegated by the board in this case. The only power conferred upon Getchell was to attest the taxbill in the name of the president of the board of public works, and this was done in compliance with the provisions of the charter itself. This point must be ruled against the appellants.

III. The next assignment is that the special taxbill sued on is void because the basis or principle of the apportionment, or any legal apportionment by which the lands therein described are charged with

the amount of this taxbill, is not recited in the special taxbill or other proceeding of the board of public works. More specifically, the insistence is that because the taxbill does not contain a recital of the total area of the lands subject to assessment, or any affirmative or general statement that the lands described in the taxbill were charged according to the area of such tract of land, the taxbill is void. Section 10 of article 9 of the Kansas City charter authorizes the assessment of private property with the cost of district sewer, and provides that when the work of construction of a district sewer shall have been completed, the board of public works shall compute the whole cost thereof, and apportion and charge the same as a special taxbill against the lots of lands in the district, exclusive of the improvements, and in the proportion that their respective areas bear to the area of the whole district, exclusive of the streets, avenues, alleys and public highways, and shall make out and certify in favor of the contractor a special taxbill against each lot in the district. The taxbill in this case certifies that the real estate described therein being the same described in the petition "'has been charged with the sum of $9,787.95, as a special tax for constructing district sewers in sewer district number 59 as provided by ordinance number 7109 of Kansas City, Missouri, entitled 'An ordinance to construct district sewers in sewer district number 59,' approved January 11, 1896. Said work has been completed according to contract by E. N. Ford, contractor, to whom this special taxbill is issued in part payment therefor and the sum mentioned has been assessed and apportioned against the aforesaid land, being the exact amount chargeable against said land, as provided by law for its portion of the cost of such work as a lien against said land for the period of one year after the last installment specified herein shall have become due and payable, and no longer, unless within such year suit shall have

been instituted to collect this taxbill," etc.   Article 9
of the city charter does not specify what the contents
of the taxbill shall be.   The answer of the defendants
does not plead any such defect in the face of the tax-
bill as is now asserted by this assignment of error,
and when the taxbill was offered in evidence, no such
objection as this was raised.   In none of the thirteen
declarations of law asked by the defendants was the
court asked to declare the taxbill void for its failure
to specify the whole area affected by the sewer, and
the exact proportion that defendants' land bore to the
whole district.   The answer merely pleads that the
board of public works of Kansas City did not compute
the whole cost of said sewer, nor of any part thereof.
On this issue the plaintiff read in evidence an abstract
from the proceedings of the board of public works,
which recites that the board of public works appor-
tioned the cost of the work of constructing district
sewer in sewer district number 59 as provided by or-
dinance number 7109, approved January 11, 1896,
$53,616.74.   And the board of public works certifies
that it has computed the cost of constructing said dis-
trict sewer in sewer district number 59, and appor-
tioned the sum among the several lots and parcels of
land to be charged therewith, charging each lot or par-
cel of land with its proportionate share of such cost.
Said apportionment is now certified to the city treas-
urer, and taxbills therefor according to such computa-
tion, apportionment and charge, are made out, certi-
fied and registered and the city treasurer is ordered
to deliver the same to the parties in whose favor they
are made out, for collection, and take the receipt of
said parties at the foot of the register in full of all
claims against Kansas City on account of work for
which said taxbills have been made out.   When this
proof was offered no objection whatever was made to
the record.   The taxbill herein sued on, on its face
shows that it was issued under ordinance number 7109,

and in part payment for the construction of said sewer and was the exact amount chargeable against said lands of the defendants. The plaintiff also offered the said apportionment of the special tax for constructing said district sewer in district number 59, which showed upon its face the number of the bill, the tract of land described therein, the total amount of the tax assessed against said district and the amount of each installment. The contention of the defendants that the taxbill should show on its face every prerequisite step necessary to its validity, is not tenable. It was ruled to the contrary in Keith v. Bingham, 100 Mo. 300. We think the taxbill was sufficient even if the point now urged against it had been timely made. It is a substantial compliance with the charter provision.

IV. The taxbill is again assailed because it is insisted that the contract of Dickey with Ford, the contractor, was in effect a transfer of the contract of the city with Ford, or was a subletting of the work embraced within it by Ford to Dickey, in violation of the city's contract with Ford, which prohibited any transfer of the contract or any subletting of the work. The contract between Dickey and Ford of date March 12, 1896, was offered and read in evidence by the plaintiff and the circuit court did not construe said contract as assigning the contract between Ford and the city, or as a subletting of the same, and we think the court properly interpreted the contract. The whole evidence, we think, shows that Ford himself performed the contract and the city has certified that he did do it in every respect in compliance with his contract, and isued him the taxbill according to its agreement with him. It was entirely competent for Ford to borrow money from Dickey, the plaintiff herein, and secure him for such loan; on the other hand, it was entirely competent for Dickey, who was

advancing Ford the money with which he would be enabled to perform his contract with the city, to employ Mr. Donnely, a competent engineer, to see that Ford carried out his contract with the city, as the validity of the taxbills, which Ford had agreed to assign to Dickey as security for his advances, depended upon Ford's performing his contract with the city. Moreover, there is a palpable difference between assigning moneys due under a contract and an assignment of the contract itself. We think there is no merit in this assignment.

V. It is next insisted that plaintiff ought not to recover in this case because of the usurious nature of the contract between Ford and Dickey. As to this, it is sufficient to say, no such objection was made when the contract between Dickey and Ford was offered and read in evidence and the circuit court was not asked to declare that such contract was usurious. In this case the plaintiff is asserting his right to enforce the lien of this taxbill, and the interest which the taxbill bears on its face is not usurious. So far as the defendants are concerned, they can in no event be charged with or required to pay any usurious interest; they are liable, if liable at all, simply for the amount of the taxbill, and the lawful interest thereon, and that is all that the plaintiff seeks in this case, but it is unnecessary to dwell upon this assignment because there is no such defense pleaded in the case, and no such proposition raised in the circuit court. By section 864, Revised Statutes 1899, we are expressly prohibited from regarding any exceptions except "such as shall have been expressly decided by the trial court," and a defense not raised in the lower court will not be determined on appeal. [Meddis v. Kenney, 176 Mo. 200; Adair v. Mette, 156 Mo. 507; Cornelius v. Grant, 8 Mo. 59; Hart v. Leete, 104 Mo. 338.]

VI. The taxbill is also assailed because the thick-

ness of the sewer pipe was not prescribed by ordinance. The charter provides "that such sewer or sewers shall be of such dimensions, material and character as shall be prescribed by ordinance." The answer alleged "that the dimensions, material and character of said district sewer were not prescribed by the ordinance of Kansas City number 7109, which pretended to provide for the construction of said sewer, but in respect to the portions of said sewer to be constructed of sewer pipe, the length and quantity of masonry required to support the brick portion, the same was left wholly to the discretion of the city engineer of Kansas City, and whatever material and work of that character went into said sewer, the dimensions and the quantity thereof were fixed and determined by said city engineer and his assistants, and not otherwise." When the ordinance was introduced in evidence counsel for defendants said, "We do not seriously contend that the length of the sewer was not set forth, or the interior diameter, but our contention is that the thickness of the pipe of that portion of the sewer was not sufficiently designated." No exceptions were saved to the admission of the ordinance in evidence. The ordinance itself required: "All of said sewers of twenty-one inches or less in interior diameter shall be constructed of vitrified clay pipe, and all of said sewers two feet or more in interior diameter shall be constructed of hard burned brick, laid in hydraulic cement mortar." And section 3 of the ordinance provides: "Said sewers shall conform in details to the plans and specifications prepared for the construction of said sewers, now on file in the office of the board of public works, marked approved, and dated December 3, 1895." In the consideration of this assignment, it will be well to keep in view that this court, in Becker v. City of Washington, 94 Mo. l. c. 380, settled the law as to defenses of this character after this manner: "No good reason

has been or can be assigned why the specifications should have been embodied in the ordinance, nor can it be shown how the omission to do so could in any manner effect the validity of the ordinance. The reference to them as on file in the office of the clerk, where they could be seen by any one interested, made the ordinance as definite and certain in that respect as if they had been embodied in the ordinance. *Id certum est quod certum reddi potest,* and in this connection it may be added that it does not 'lie in the mouth' of the defendant now to assert that the specifications were not on file in the office of the city clerk at the time the ordinance was passed, in the face of its admission, on its own record, and in the recitals of the ordinance itself, that at that time they were on file there." And in Paving Company v. Ullman, 137 Mo. l. c. 571, it was ruled that "the reference in the ordinance to the specifications in the office of the engineer was quite sufficient as a description of such work. It was not necessary for all the details of the working plan to be developed in the ordinance itself. [Becker v. Washington, 94 Mo. 375.]" The ordinance in this case having provided that the work should conform to the plans and specifications then on file in the office of the board of public works, those plans and specifications were as much a part of the ordinance as if they had been set forth therein in detail. As the ordinance itself provided that all of said sewers of twenty-one inches or less in interior diameter should be constructed of vitrified clay pipe, and all of said sewers two feet or more in interior diameter should be constructed of hard burned brick laid in hydraulic cement mortar, it is obvious that the dimensions of the sewer pipe and the material of which it was to be constructed were prescribed by the ordinance, and were not left to the discretion of the city engineer. The counsel for the defendants candidly admitted that much when the ordinance was introduced, but confined himself to the

objection that the thickness of the pipe was not suffi-ciently designated.  It is to be observed that the an-swer makes no point in regard to the thickness of the sewer pipe, and the declarations of law asked by the defendants present no such issue to the circuit court, and that court was not asked to pass upon that ques-tion either in an exception to the ordinance and the specifications, when offered, or in the declarations of law.     And yet it is now insisted that the whole pro-ceeding is void because the ordinance itself did not fix the thickness of the sewer pipe.     The evidence dis-closes that the contract and specifications were pre-pared before the letting of the work was done and the contractor, Ford, testified that when he went to the office of the city engineer to bid on the work, he found the specifications and plans and the profiles.  It also appears in evidence that the contract to be executed by the successful bidder was also prepared and was on file for the inspection of the bidders before the bid-ding was done.  The contract entered into in this case by Ford provided that "the pipes shall be straight, smooth and evenly burned, thoroughly sound and vit-rified, well glazed, free from lumps or other imperfec-tions, of uniform quality and thickness, and shall not vary more than one-half inch from a true circle.  The thickness shall be of twelve inch pipe, not less than one and one-eighth inches; of fifteen inch pipe not less than one and one-fourth inches, and of eighteen inch pipe, not less than one and one-half · inches, and of twenty-one inch pipe, not less than one and three-fourths inches."  Not only did Mr. Harper, who had been in the office of the city engineer for twelve years, and Mr. Ford, the contractor, testify that the specifi-cations and contract were prepared before any steps were taken for advertising for bids, but the contract on its face shows that the contract and specifications were embodied in the same instrument and it was on these specifications and this contract that the bid was

made. The evidence further tends to show that it had been the uniform custom and practice to use but one character of sewer pipe for sewers of this dimension during the twelve years, and that was that it should be double strength vitrified pipe. So far then as the thickness of the sewer pipe is concerned, there was ample evidence that it was specifically named in the specifications and there is no pretense that the contractor bid on double strength sewer pipe, and put in an inferior quality. In view of the decisions of this court in Sheehan v. Gleeson, 46 Mo. 100, and City of St. Joseph to use v. Owen, 110 Mo. 445, we are of the opinion that the neglect to describe the thickness of the sewer pipe in the ordinance does not and should not invalidate this contract, especially so in view of the fact that the circuit court was not asked to declare the proceedings void because the thickness of the sewer pipe was not specified.

The remaining point under this exception is as to the masonry. As to this proposition the answer relies upon the failure of the ordinance to prescribe the length and quantity of masonry required to support the brick portion of the sewer. The ordinance did not specify the amount of the rubble masonry to be furnished, but the plans showed where the construction would require the sewer to be built above the surface, showing the courts and side protection of masonry and the way the drain should be put to keep the water from going under the sewer. The engineer testified that the amount of masonry could not be definitely stated, an estimate only could be made, and the price per yard. In this case it was estimated it would require five hundred yards, but the final measurement after the sewer was completed showed it amounted to 850.4 yards. The engineer testified that it was impossible to know in advance how much masonry would be required. The actual condition after digging into the ground would alone disclose that. Often they would run into soft

places, which the surface indications would not disclose. The country through which the sewer was to be constructed was very rough. In some places the sewer was necessarily built out of the ground, in order to get the proper grade and not make the depth of the sewer in other places expensive, and in places it was necessary to put in masonry to support the sewer. All that could be done in advance was to give the correct length and location of the sewer and provide for the excavations and character of the sewer and estimate the cost and fix the price at which the work should be done. To hold that it was necessary to state exactly the amount of such masonry in the ordinance or the specifications would be to hold that a sewer could never be lawfully constructed in Kansas City with its hilly, broken surface. The law is not so unreasonable. The profile was made after an actual survey and the length of the sewer definitely described and proper estimates for those conditions which would only be revealed when the ditch was dug and the nature of the ground ascertained. Clearly there was no error in refusing the declaration of law that the whole bill was void even if there had been an amount of such masonry used in excess of the contract requirement. The defendants under the charter would only have been entitled to a credit for all in excess of the contract. [Quest v. Johnson, 58 Mo. App. 58.] But the circuit court found there was a substantial compliance with the charter, ordinance, and the contract and we find nothing to justify us in interfering with its finding.

VII. The circuit court ordered the judgment should bear ten per cent interest. As the defendants failed to pay the taxbill when due, the charter allows ten per cent, and by section 18, article 9, of the charter, the judgment, exclusive of costs, shall bear interest at the same rate as the taxbill.

After a careful consideration of this record, we are

of the opinion that the judgment was for the right party and that there is no reversible error in the case. The judgment is accordingly affirmed.    All concur.