MILLIKEN-HELM COMMISSION COMPANY v. C. H. ALBERS COMMISSION COMPANY, Appellant.

In Banc, June 10, 1912.

1. **ASSIGNMENT OF CONTRACT: Collateral Security: Right of Assignee to Sue.** The proper person to sue on contracts transferred by the covenantee to defendant as collateral security for a loan and later assigned by said covenantee to the plaintiff, with full power to collect whatever was due the assignor thereon, is the said assignee.

2. ————: ————: ————: **In Possession of Transferee.** Nor does the fact that the contracts so transferred by the covenantee to the lender as collateral security for a loan were in the physical possession of such lender disable the assignee of such covenantee to sue the lender who also was the covenantor and pledgee. The writings were only evidence of the contracts, which arose from the nature of the engagements entered into by the parties. The assignee had the right to enforce the contracts according to their terms subject to the right of the depositary (the defendant) to retain out of any sum for which he was liable as the maker of said contracts an amount sufficient to discharge the debt for which the contracts were transferred to him as collateral security for a loan.

3. **PLEDGE: Duty of Pledgor to Tender Amount Due Pledgee: No Pleading.** The pledgee does not take the legal title upon a deposit of non-negotiable paper or rights arising under contract, with a lender to secure a loan; in such case the pledgee acquires merely a possessory right to retain the property until the payment of the debt, or a lien upon its proceeds in case it is sold after default of the pledgor. Hence, it was not the duty of the plaintiff, to whom had been assigned certain contracts entered into by the assignor and defendant as buyer and seller of grain, which had been previously pledged to the seller as collateral security for money borrowed from the seller by the buyer, to pay, or tender in the petition, to defendant, before or when plaintiff sued on the contracts, the amount of the loan secured by the contracts. Defendant could have pleaded such debt as a setoff to the amount plaintiff was entitled to recover, but having failed to exercise that option it cannot complain that the judgment is for the whole amount due under the contracts.

> *Held*, by WOODSON, J., dissenting, that tht pledgor or his assignee of personal property or choses in action, pledged as collateral security for the payment of a debt, cannot sue the pledgee and receive the property so pledged or its value, without first paying or offering to pay the debt to secure the payment of which the property or contracts were pledged; and a suit brought by the assignee on contracts pledged as collateral security, without a payment or tender of the debt, is so brought for the purpose of coercing the pledgee (who is at the same time the maker of the contracts) to waive the illegality of the contracts as a defense, by pleading the debt as a setoff, and should not be tolerated. *Held*, also, that there is no distinction as to the right of the pledgee, whether the subject of the pledge be personal property or choses in action, such as bills, bonds, notes, contracts, etc.

4. ———: **Judgment Against Pledgee in Favor of Assignor for Entire Amount.** Where the petition in the suit on defendant's own contracts deposited with it as collateral security for a loan or as an advanced payment of the amount due thereon pending settlement, did not contain any averment relating to the loan, and defendant did not in its answer plead that loan or payment as an offset, and at the trial declined either by pleading or instruction to ask a reduction in the recovery on that account, there was no ruling adverse to defendant's interest in that matter.

5. ———: ———: **Corrected by Appellate Court.** But the Supreme Court is by statute (Sec. 2083, R. S. 1909), vested with power to give such judgment as ought to have been given

in such case; and where the plaintiff, in his brief, asks that the judgment be reduced by the amount of the loan or advance payment secured by the contracts sued on, that will be done.

Appeal from St. Louis City Circuit Court.—*Hon. Virgil Rule,* Judge.

AFFIRMED (*conditionally*).

*Barclay, Fauntleroy & Cullen* for appellant.

(1)  The peremptory instructions to find for defendant on the admitted facts should have been given. The pledge of the grain contracts by the Thyson Company (assignor of plaintiff) to the defendant, as collateral for a loan by the Thyson Company passed an interest or special property in those choses in action; so that after maturity of the notes, an assignee of the Thyson Company should not maintain a suit upon the contracts or claim any right of possession, until payment of the loan and interest.  Yeatman v. Sav. Inst., 95 U. S. 764; Bank v. Barnett, 184 Fed. 607; Roeder v. Brewing Co., 33 Mo. App. 49; Howell v. Caryl, 50 Mo. App. 449; Gaty v. Holliday, 8 Mo. App. 118; Tennent v. Ins. Co., 133 Mo. App. 357.  Law and equity agree in securing to a pledgee the possession and such title as will protect the pledgee to secure ultimate payment of the debt; and the debtor cannot, by his own act and against the protest of the pledgee, transform the pledge into a purchase or sale, as attempted in this case.  Perry on Trusts (2 Ed.), secs. 438-441.  (2) A pledgee of such contracts to deliver property (or choses in action) holds a special interest subject to redemption by payment of the debt for which the pledge is made, and until that payment the pledgor cannot transfer title so as to clear the pledge of liability for the debt.  Reynolds v. Railroad, 143 Ind. 579; Ware v. Russell, 57 Ala. 43; Best v. Crall, 23 Kan. 342.  The pledgor could not recover without doing equity (by

paying its debt) and the assignee acquires no greater title to a non-negotiable chose in action than had the assignor. Schaaf v. Fries, 90 Mo. App. 116. (3) An action on a written contract, executed by the defendant, cannot be maintained when the plaintiff has no right to the writing itself and the latter is in possession of defendant as evidence of and upon a contract to be held as collateral security for an unpaid loan. 22 Ency. Law, (2 Ed.), p. 858. (4) The plaintiff is not the real party in interest in the grain contracts sued upon, and hence cannot maintain this action on the facts (undisputed) touching the assignment to plaintiff by the Thyson Company. R. S. 1909, sec. 1729; Hoffman v. Columbia, 76 Mo. App. 553; Gardner v. Armstrong, 31 Mo. 535. (5) The grain contracts in suit are choses in action, arising out of contract, and hence are assignable as collateral by deposit thereof to secure the notes given for the loan then made to the Thyson Company on the notes in evidence. R. S. 1909, secs. 1729, 2775; 22 Ency. Law (2 Ed.), pp. 844, 846; Jaege v. Bossieux, 15 Gratt. 83; Cook v. Bell, 18 Mich. 387. (6) The verdict and judgment are at variance with the instruction given by the court for defendant, limiting the rights of plaintiff, as assignee of the written contracts for grain as sued upon; which is obviously sound and correct. Bank v. Land Co., 152 Mo. 1. (7) The result below and the judgment expressing it are a serious invasion of the property rights of appellant under the Federal Constitution (14th Amendment) and are an invasion of defendant's rights under that Constitution which protects defendant against invasion of the obligation of the contract between it and the Thyson Company for collateral security, and neither the laws nor the courts of Missouri may properly diminish or annul that obligation, as does the judgment below in this cause. Los Angeles v. Water Co., 177 U. S. 575; Shapleigh v. San Angelo, 167 U. S. 657.

*Schnurmacher & Rassieur* for respondent.

(1)   Plaintiff is the real party in interest and has the right to maintain this suit.   It acquired all the claims and demands of the Thyson Company against defendant growing out of the contracts sued on.   The legal title thereto is vested in plaintiff.   Under the statute requiring suits to be brought in the name of the real party in interest, an assignee is entitled to sue in his own name, regardless of any collateral arrangement between him and the assignor as to the proceeds. Guerney v. Moore, 131 Mo. 650; Gay v. Orcutt, 169 Mo. 400; Young v. Hudson, 99 Mo. 102; Dean v. Chandler, 44 Mo. App. 338; Howe v. Mittleberg, 96 Mo. App. 490. (2)   Plaintiff can maintain this suit, even though defendant holds the written contracts as security for the payment of the notes given to it by the Thyson Company.   The contracts matured Dec. 31, 1903.   Defendant then owed the vendee damages growing out of its default upon these contracts.   When the defendant loaned the vendee money in July, 1904, the contracts, surrendered as collateral, were merely evidence out of which the vendee's claim against defendant arises.   The deposit of these contracts did not constitute a pledge; at most, it amounted to an agreement to permit defendant to set off the amount loaned, out of the moneys which defendant then owed, the exact amount of such indebtedness to be ascertained later.   (3)   But even if the deposit of the contracts in July, 1904, be regarded as a pledge, still plaintiff can recover thereon.   Dickey v. Porter, 203 Mo. 1; Tennent v. Ins. Co., 133 Mo. App. 345; Van Idour v. Nelson, 60 Mo. App. 523.   (4)   No tender was necessary to authorize plaintiff to maintain this suit on these contracts.   Richardson v. Ashby, 132 Mo. 238; Craig v. McHenry, 35 Pa. St. 120; Earle v. Ins. Co., 7 Daly, 303.

STATEMENT.—In September and October, 1903, defendant sold to the Thyson Commission Company 95,000 bushels of number two red winter wheat for December delivery. These transactions were expressed in nineteen contracts which were facsimiles of each other except as to the price and date, each evidencing a sale and purchase, signed, respectively, by the seller and buyer, and all of them containing the following clause: "This contract is subject in all respects to the rules and regulations of the Merchants' Exchange of St. Louis." They matured on the 31st of December, 1903. Payment was demanded by the buyer and refused by the seller on March 15, 1904, seemingly for want of agreement as to the settling price. In July, 1904, the buyer borrowed from the seller $6000 on its notes, at ninety days, and as collateral security deposited with the lender all of the said contracts. Thereafter, in March, 1908, the borrower assigned all its right and title to each of said contracts to the plaintiff in this action, with full power to collect the amounts due thereon, and after certain deductions to pay over the remainder to the assignor. Thereupon, May, 1908, plaintiff brought this action, setting forth in separate counts the obligations of the respective contracts and praying judgment for the difference in the prices named in them and the price of 92 cents per bushel of the grain, and alleging that this figure had been fixed as the price of said commodity on the 31st of December, 1903 (when delivery was compulsory on the seller), by proper proceedings had under and in accordance with the rules of the St. Louis Merchants' Exchange.

The petition averred that the written contracts sued on were in the hands of defendant, and, therefore, not filed with it.

The answer averred: 1st, That plaintiff was not the real party in interest; 2nd, That the defendant was the owner and holder of the contracts sued upon, "and that plaintiff has no legal title or right thereto what-

soever;" 3d, And that the price fixed as a settling basis for such contracts by the St. Louis Merchants' Exchange was "not real but fictitious," and caused by "a corner, conspiracy or combination in restraint of trade," in violation of the State and Federal constitutions. Issue was joined by reply.

For plaintiff, there was evidence tending to prove the allegations of its petition. The defendant gave evidence showing that the contracts sued on were in its possession and had been deposited with it as collateral security for the notes of plaintiff's assignor, aggregating about $6000. These notes and said contracts it also introduced in evidence, showing that they were unpaid and had become overdue at the time the maker assigned the contracts to plaintiff.

Prior to the institution of this suit, plaintiff delivered to defendant the following communication:

"St. Louis, Mo., May 12, 1908.
"C. H. Albers Commission Company:
"We wish to notify you that the Thyson Commission Company has assigned to us all its claims and demands against your company, and particularly its claim against your company for damages growing out of the failure of your company to deliver to the Thyson Commission Company the wheat called for in the contracts referred to in the enclosed copy of the assignment. We herewith make demand on you for the payment of the same; unless same is paid we now notify you that we will institute suit to enforce payment. Yours very truly,

"Milliken-Helm Commission Company,
"(Enc.) by Louis Helm, Pres.

"Delivered copy of above letter, together with copy of assignment to C. H. Albers and made demand, this 12th day of May, 1908, on floor of Merchants' Exchange, at 1:10 p. m. Louis Helm."

At the conclusion of its testimony, plaintiff stated in open court that it would "consent to a reduction of its claim by $6000 and interest" due on the two notes of its assignor which defendant held if defendant would "by pleading or instruction" ask this to be done. To this offer defendant replied that it would stand on its answer which contained "its complete defense," and that if plaintiff desired to give a "voluntary credit" it was "its own affair;" but defendant stood upon its "pleadings and evidence."

The court instructed the jury in case they returned a verdict for plaintiff to make their calculation of the amount upon the basis of the price fixed for settlement of such contracts on December 31, 1903, by the action taken under the rules of the Merchants' Exchange which established the settling price to be 92 cents per bushel. A verdict was rendered in accordance with this instruction, which, after some slight remittitur on some of the counts, aggregated $11,918.52.

After the overruling of its motions for new trial and in arrest, defendant duly perfected its appeal.

## OPINION.

BOND, C.—I. Appellant requests, in its brief, that we shall reserve any rulings "on the effect and validity" of the rules of the Merchants' Exchange or their application to this case until the appurtenant law can be submitted in future suits, when that ruling will be controlling, and that we shall consider in the present case solely the specific points argued and presented for a reversal. We will comply with this request. This necessarily excludes from review the amount of the judgment obtained, since that was based on a price fixed under the Exchange rules, and restricts our consideration to the question of the right of plaintiff to recover at all.

The first defense in the answer is that plaintiff is not "the real party in interest" to prosecute this action. Plaintiff's right to sue is derived through a written transfer (coupled with notice to the defendant) of all the contractual obligations expressed in the several contracts made by defendant with plaintiff's assignor. The fact that the contracts so assigned were at that time in defendant's possession as security for overdue notes which it held against plaintiff's assignor, in nowise prevented the covenantee in those contracts (plaintiff's assignor) from assigning its general ownership therein, subject to any special interest or lien of the custodian (the maker of the contract). [Southworth Company v. Lamb, 82 Mo. l. c. 249; Richardson v. Ashby, 132 Mo. 245.] The deposit of these contracts as collateral security did not discharge their obligatory force nor affect the liability of the defendant as the covenantor, nor deprive the covenantee of its cause of action for a breach of said agreements. The right and title to its cause of action for a breach of said contracts continued in the covenantee, and was validly transferred to plaintiff, who became as such assignee entitled to all redress which could have been had by the assignor. In such cases the assignee is the real party in interest and may sue in its own name. [R. S. 1909, sec. 1729; Young v. Hudson, 99 Mo. 102; Guerney v. Moore, 131 Mo. 669; Gay v. Orcutt, 169 Mo. 406; Dickey v. Porter, 203 Mo. l. c. 22; Conrad v. Fisher, 37 Mo. App. l. c. 403; Van Idour & Co. v. Nelson, 60 Mo. App. 523.] Hence this point is ruled against appellant.

II.    Neither can we sustain the further contention that the fact of the physical possession of the written contracts by defendant disabled the assignee of the obligee in said contracts to sue. These writings were only evidences of the contract or legal obligations expressed by their terms and which arose from the nature

of the engagements entered into by the parties. Until these were discharged by payment or satisfaction, their enforceability continued as it would have survived if the written evidences had been lost or destroyed. We rule therefore, that the fact that the contracts assigned to it were in the possession of defendant at the time did not deprive plaintiff of the right to enforce them according to their terms and subject to the right of the depositary to retain out of any sum for which he was liable as the maker of said contracts an amount sufficient to discharge the notes for which they were collateral security.

III. The next error assigned is, that it was plaintiff's duty before or when it filed this suit to pay or tender to defendant the amount of the notes due from plaintiff's assignor to secure which its own contract obligations had been deposited. This position is based on the assumption that plaintiff's assignor and the defendant, under the facts in this record, stood in the technical relation of pledgor and pledgee as to the grain contracts which had been deposited (pending the settlement of defendant's liability on said contracts) to secure a loan made to such assignor.

The law on the subject of pledges is plain and well defined. The pledgee of tangible personal property, such as gold nuggets, lumber, cattle or physical things of intrinsic value, does not take the legal title to the property put in his possession. He may take the legal title to commercial paper held as collateral security or to shares of corporate stock when caused to be issued in his name, but these are exceptional instances. He does not take the legal title upon a deposit of non-negotiable paper or rights arising under contract. As to these and as to articles ordinarily pledged, the pledgee acquires merely a possessory right to retain the property until the payment of the debt, or a lien upon its proceeds in case it is sold after default of the pledgor.

The implied right of the pledgee to sell for non-payment of the secured debt at its maturity does not extend to commercial paper, or choses in action having no marketable value, for as to these he cannot sell without either the aid of the court or the authority of a contract with the pledgor. The general title of the pledgor of goods and chattels is vendible, or may be levied upon by execution or attachment subject to the pledgee's lien. [Jones on Mortgages (2 Ed.), 651; Richardson v. Ashby, 132 Mo. 1. c. 246; Trust Co. v. McMillan, 188 Mo. 1. c. 569.] On the other hand, the pledgee upon default may pursue any of several remedies: "1st, He may bring an action upon the debt secured; 2d, He may make sale of certain things pledged as at common law without judicial proceedings; 3d, He may proceed under statutory provisions where these exist; 4th, He may make sale by decree of a court of chancery; 5th, He may sell under special power of sale executed by the pledgor. He may use any one of these remedies against the debtor or his property for the collection of the principal debt without destroying or impairing the security for the debt until it is actually paid." [Jones on Mortgages (2 Ed.), secs. 589-590.]

If these rules should govern the case at bar (as claimed by defendant), then it is clear that the defendant may avail itself of the remedy of an independent suit on the notes made to it by plaintiff's assignor. And it is equally clear that defendant was not compelled to plead such notes as an offset in the present action. It had the full option to do so, for that right enured to it when it became possessed of the grain contracts as security for the notes given by plaintiff's assignor. Whether it would do this, or whether it would enforce the indebtedness shown by the notes in a separate suit, was a matter resting in the choice of the defendant. With full knowledge of its rights as the custodian of these causes of action sued on, its answer in this case wholly fails to plead that the causes of action

sued on are subject to any lien or offset in its favor as pledgee. The answer simply denies that plaintiff is the real party in interest; denies his title to the causes of action; and avers that defendant "is the legal owner and holder of each and all of the instruments of writing sued upon herein," and avers that "plaintiff has no legal right or title thereto whatsoever." None of these defenses, by any just legal intendment, conveys the idea that defendant relied upon its status as pledgee, or desired to enforce its right as such in the present action. The answer contains no affirmative defenses, but mere denials. An examination of the petition discloses that the nineteen causes of action contained therein are based only on the alleged infraction by defendant of its contracts to deliver certain grain, and that the recovery sought is for the damages caused by the alleged breach by defendant of its contracts mentioned in the petition. The petition contains no allegations referring to defendant as the pledgee or custodian of such contracts, or as possessed of any special interest or lien therein of any description. It merely alleges the execution of the contracts, their assignment to plaintiff and the breach thereof by defendant. The defendant did not see proper to plead its status or right as the possessor of the grain contracts to this action, based on them. Neither plaintiff nor the court had any power to require defendant to set up his special defenses to this action, or to plead otherwise than as in its answer. The result of this suit has not precluded the defendant from instituting an action against the maker of the notes held by it. The defendant is free to pursue its remedy in that respect. But defendant is not entitled to withhold its defense of an offset in the present action, thus retaining possession of the notes which it was privileged to use in that way, and thereafter complain of a recovery by plaintiff for the full amount of the liability of the defendant under the con-

tracts sued upon. Nor can defendant insist that its *unpleaded* status and rights as to the contracts sued on could be taken cognizance of as a defense, *pro tanto,* to the present action. The rule is axiomatic that triable issues are formed by the pleadings and cannot be expanded either by evidence or instructions. [Lynch v. Morrow's Adm'r, 28 Mo. 357; Currier v. Lowe, 32 Mo. 203; Greene v. Gallagher, 35 Mo. 226.] Whatever rights defendant had by its custody of the causes of action were special. The assertion of these rights by defendant in this action or in a suit on its notes was optional. Defendant chose not to assert them in this suit. Hence, it cannot assign error for a recovery which ignored defenses which it did not assert.

We have considered the contention of defendant, that plaintiff was precluded from bringing the present suit before paying or tendering to pay the notes given defendant by plaintiff's assignor, and to secure which defendant's grain contracts had been left with it, as if the transaction was strictly within the principles applicable to ordinary pledges of personal property. We have seen that defendant, under the pleadings and issues joined in this case, cannot avail itself of the rule preventing a pledgor from recovering the subject of the pledge from the pledgee, *in invitum,* without paying or offering to pay the debt secured. And while that is sufficient to dispose of the points under review, yet we do not wish to be understood as conceding that the transaction shown by this record partook of the essential characteristics and attributes of a pledge of goods and chattels, as that subject is defined by law.

In its essence, the present transaction was nothing more than an advance in the form of a loan by a debtor to his creditor, to be secured by leaving with the debtor the written evidences of its own obligations to the creditor. It was, inferably, a convenient business way of possessing a creditor with some part of what was due him, pending a dispute as to the full amount.

We do not hold that the legal effect of this action of the two parties made it the duty of the creditor to repay the loan before calling on the debtor to pay what was due from it. It was at most a transaction resulting in the creation of reciprocal indebtedness, and one wherein the contractee (as may be assumed from the verdict in this case) was entitled to a much larger sum than was loaned him by the contractor.

IV. It is finally suggested for defendant, that the judgment herein deprives it of a property right or impairs the contract under which it held the grain contracts as collateral. We cannot assent to that view: Defendant declined to plead or set up its rights to the collateral when sued upon the obligations expressed in them. When the interest of defendant later appeared from the evidence, defendant also declined (though plaintiff consented this might be done) "either by pleading or instruction" to ask a reduction of any recovery by plaintiff to the amount of the notes and interest given by its assignor. Defendant lost no constitutional protection by any ruling *adverse* to its special interest. For no issue presenting it was before the court, and defendant refused to assert it under the offer made by the plaintiff on the trial. Necessarily therefore the court did not rule *against* such interest.

V. Circuity of action may be avoided by a disposition of this case whereby complete justice may be done to the parties without further litigation or delay. *Interest reipublicae ut sit finis litium.*—Broom's Legal Maxims. This court is invested with statutory power, after an examination of the record, to "give such judgment as [the trial] court ought to have given, as to them shall seem agreeable to law." [R. S. 1909, sec. 2083.] The defendant has in its possession two notes representing loans made by it to plaintiff's assignor, aggregating about $6000 and interest. Counsel for

plaintiff, in their brief and oral argument in this court, have requested, if the judgment in its favor should be affirmed, that this court enter a decree adjudging that such judgment shall be reduced by the amount of said notes and interest, provided defendant will deliver them up for cancellation.

We, therefore, order that the judgment heretofore recovered by plaintiff be affirmed for the amount thereof less the principal and interest thereon of the two notes in the possession of the defendant executed by plaintiff's assignor, provided defendant shall within ten days deliver up said notes duly cancelled. Cost of this appeal to be taxed against defendant. Otherwise the judgment recovered herein by plaintiff is affirmed. *Brown, C.,* concurs.

PER CURIAM.—The foregoing opinion of BOND C., is adopted as the opinion of the Court in Banc on rehearing. All the judges concur, except *Woodson, J.,* who dissents in opinion filed.

## DISSENTING OPINION.

WOODSON, J.—It stands undisputed that the C. H. Albers Commission Company, the defendant, sold to the Thyson Commission Company ninety-five thousand bushels of number two red winter wheat, at a stated price, to be delivered December 31, 1903, evidenced by nineteen written contracts, duly executed, each in the form as stated in the opinion of our learned commissioner, Mr. BOND. On December 31, 1903, the defendant having failed to deliver the wheat according to the terms of said contracts, the Thyson Commission Company claimed that it was damaged thereby in a sum of about $10,000, which was denied by the defendant, it claiming that the said contracts of sale were illegal and void for the reasons stated in the answer.

In July, 1904, the Thyson Commission Company borrowed of the defendant the sum of $6000, evidenced by its two promissory notes, and to secure the payment of the same, the former pledged or hypothecated the said nineteen contracts of sale with the latter as collateral security, the pledgee taking the physical possession of all of said contracts.

In March, 1908, the Thyson Commission Company, for a valuable consideration, assigned all of its rights, title and interest in and to said contracts to the plaintiff, the Milliken-Helm Commission Company, and shortly thereafter the plaintiff instituted this suit in the circuit court of the city of St. Louis to recover said damages, which it was claimed had accrued to the Thyson Commission Company, and which was assigned by it to the plaintiff.

The petition was in conventional form, consisting of nineteen counts, each asking judgment for the full amount of damages claimed to be due under each contract; no reference whatever is made in the petition about the $6000 borrowed by Thyson Commission Company from the defendant, nor of the pledge of the latter as collateral security for the payment of said $6000.

The answer is short, and reads as follows (formal parts omitted):

"Now comes said defendant by its attorneys and for answer and defense to the petition herein and to each and every count thereof respectfully avers and states to the court the following:

"1. This defendant admits that it is now and at all times stated in said petition was a corporation, organized and existing under the laws of Missouri.

"2. Defendant avers that plaintiff is not the real party in interest, and that plaintiff is not the owner or holder or entitled to the possession of any of the said instruments of writing mentioned in said petition and that defendant is not entitled to claim or demand any right thereunder.

"3. Defendant further avers that it is the legal owner and holder of each and all of the instruments of writing sued upon herein, and defendant avers that plaintiff has no legal title or right thereto whatsoever.

"4. This defendant avers that, under the rules and regulations of the Merchants' Exchange of St. Louis, in force during the year 1903, no fictitious prices could be claimed or recovered upon contracts for delivery of grain in the St. Louis market, and no prices fixed, established or based upon quotations from or upon a manipulated or fictitious market could be made the basis of any claim upon any such contracts, and that the so-called and quoted price of number 2 red winter wheat, to be delivered during December, 1903, in the St. Louis market, on the Merchants' Exchange, was not real, but fictitious, and was caused and produced by a 'corner,' conspiracy or combination in restraint of trade, operated in St. Louis and in Chicago between parties engaged in interstate commerce in Missouri and in Illinois, and by parties engaged in operating said corner and conspiracy in Missouri at that time in the years 1903 and 1904, in violation of the laws of this State and of the United States, and that whatever claims might otherwise exist upon said instruments are null and void, because the attempted enforcement thereof against this defendant would be in violation of said laws, State and Federal.

"5. Except as admitted in this answer, this defendant denies generally each and every allegation of the petition; and prays to be hence discharged without day, with its costs."

The reply is as follows (omitting caption and signatures):

"Now comes the plaintiff and for reply to the answer of defendant denies every allegation of new matter in said answer contained. And plaintiff again prays judgment in accordance with the prayer of its petition."

A trial was had which resulted in a judgment in favor of the plaintiff for the sum of $11,918.52. From that judgment the defendant duly appealed to this court.

While the defendant did not plead the notes previously mentioned as an offset, nor did the trial court submit that question to the jury, nevertheless, counsel. for respondent request this court to set off the amount of the notes and the interest thereon, against the amount of the judgment rendered in the circuit court: That procedure is a little novel, to say the least of it. That fact, however, will receive further consideration presently.

I. It will be seen from the foregoing statement of the case, that at the time of and long prior to the date of the assignment of the contracts of sale by the Thyson Commission Company to the plaintiff, the defendant held them as a pledge as collateral security for the payment of the $6000, evidenced by said two promissory notes.

Counsel for appellant insist that, under the facts stated, the respondent is not entitled to a recovery for the reason that neither the assignor, the Thyson Commission Company, nor the assignee, the Milliken-Helm Commission Company, could maintain an action on said contracts, even though it be conceded that they were legal and valid, until the $6000, and interest thereon, had been paid, for which the contracts had been pledged as collateral security. Upon the other hand, counsel for the respondent deny that insistence, and contend that their client had a perfect cause of action against the appellant at the time of the institution of the suit and that the matter of the pledge was a matter of defense, and should have been pleaded by appellant by way of set-off.

This contention is sharply denied by counsel for appellant, and they make the further contention that this

mode of procedure resorted to by respondent is an effort on the part of the latter to compel the former to either waive the defense that the sale contracts are illegal and void, by forcing it to plead the notes and pledge as a setoff, thereby admitting their legality, or run the risk of losing the $6000, and its security, by omitting to plead them as a setoff. They also insist that this injustice, which is apparent upon the face of the record, was and is the inducing cause which moved respondent to so generously request this court to make the offset referred to, which it refused to recognize or do, by not paying or offering to pay the notes, which were conceded to be due and payable, and secured by said pledges, prior to the institution of this suit.

There are quite a number of legal propositions made and discussed by counsel in their briefs, but viewing the case as I do, it is unnecessary to notice but one of them, and that is, can the pledgor or his assignee of personal property or choses in action pledged as collateral security for the payment of a debt, sue the pledgee, and receive the property so pledged or its value without first paying or offering to pay the debt for which it was pledged to secure?

In my opinion, that question must be answered in the negative, and my reasons for so believing will be here stated.

In the first place, I desire to state, by way of a preliminary observation, that counsel for respondent have cited us to no case or textwriter which so holds, or which authorizes the maintenance of such a suit; and after a somewhat extensive examination of the subject, I have been wholly unable to find any such authority, but I have found an abundance of authority to the contrary.

In the case of Yeatman v. Savings Institution, 95 U. S. 764, the firm of O'Fallen & Hatch, doing business in St. Louis, on July 22, 1871, delivered in pledge to the New Orleans Savings Institution two certificates of in-

debtedness issued by the State of Louisiana, each for the sum of $5000, to secure the payment of a promissory note of the firm for $5000, held by said institution, dated July 21, 1871, and due January 21, 1872. The firm and the individual members thereof were on November 27, 1871, duly adjudged bankrupts by the district court of the United States for the Eastern District of Missouri; and a receiver in bankruptcy was duly appointed, and ordered to take charge of the assets of the firm, and to administer the estate according to law. First the receiver, and subsequently the assignee in bankruptcy, each claiming to act under the authority of that court, demanded of said Savings Institution the surrender of the certificates, which was by the latter refused, except upon the payment of the note for which they had been pledged by the firm. Said institution expressed to the assignee in bankruptcy 'a willingness to surrender the certificates or have them sold, if an amount sufficient to pay the note was left in New Orleans with the agent of the assignee, until proof of his debt should be made in the bankruptcy court. This was not assented to, but the assignee insisted upon the right to the actual custody of the certificate pending the bankruptcy proceedings. The Savings Institution did not become a party to the proceeding in bankruptcy by proving up its debt against the estate, or in any other mode. The assignee in bankruptcy then instituted suit against the institution to recover the value of said certificates so pledged by the firm to it, based upon the ground that, by its refusal to surrender the possession of them to him, it had converted them to its own use, and become liable for the value thereof. The Savings Institution insisted that having obtained the certificates in due course of business, and for a valuable consideration, it was entitled to hold them until the note of the firm should be paid in full. The trial resulted in a judgment in favor of the institution, and thereupon Yeatman sued out a writ of error. In affirm-

ing the judgment of the circuit court, the Supreme Court of the United States, in speaking through Mr. Justice HARLAN, on page 766, said:

"Counsel for the plaintiff in error has raised numerous questions for our consideration, which, under the view we take of the case, it is not necessary to determine. The sole question which, under the pleadings, it seems essential to decide, is, whether the Savings Institution, by its refusal to surrender the certificates, can be held to have converted them to its own use.

"We are of opinion that this question must receive a negative answer. The Savings Institution, by virtue of the pledge, acquired a special property in the certificates, and, until the payment of the note for $5000, was not bound to return them either to the bankrupt, the receiver, or the assignee in bankruptcy. Such are, beyond doubt, its rights at common law, as well as under the Code of Louisiana, which declares that 'the creditor who is in possession of the pledge can only be compelled to return it when he has received the whole payment of the principal as well as the interest and costs.' [Rev. Code, La., sec. 3164.]

"These rights were not affected by any of the provisions of the bankrupt law. The established rule is, that, except in cases of attachments against the property of the bankrupt within a prescribed time preceding the commencement of proceedings in bankruptcy, and except in cases where the disposition of property by the bankrupt is declared by law to be fraudulent and void, the assignee takes the title subject to all equities, liens, or incumbrances, whether created by operation of law or by act of the bankrupt, which existed against the property in the hands of the bankrupt. [Brown v. Heathcote, 1 Atk. 160; Mitchell v. Winslow, 2 Story, 630; Gibson v. Warder, 14 Wall. 244; Cook v. Tullis, 18 Wall. 332; Donaldson, Assignee, v. Farwell, 93 U. S. 631; Jerome v. McCarter, 94 U. S. 734.] He takes the property in the same 'plight and condition'

that the bankrupt held it. [Winsor v. McLellan, 2 Story, 492.] In Goddard v. Weaver, 1 Wood, 260, it was well said that the assignee 'takes only the bankrupt's interest in property. He has no right or title to the interest which other parties have therein, nor any control over the same, further than is expressly given to him by the bankrupt act, as auxiliary to the preservation of the bankrupt's interest for the benefit of his general creditors. It would be absurd to contend that the assignee in bankruptcy becomes *ipso facto* seized and possessed in entirety, as trustee, of every article of property in which the bankrupt has any interest or share.'

"The Savings Institution, therefore, incurred no liability by its refusal to surrender the certificates upon the demand of the receiver or the assignee. Such refusal affords no evidence of a conversion of them to its use.

"Nor was it right to hold them impaired by its failure to appear in the bankruptcy court, or its refusal to prove its debt, in the customary form, against the estate of the bankrupts. The only effect of such refusal was to lose the privilege of participating in such distribution of the estate as might be ordered by that court. It had the right to forego that advantage, and look for ultimate security wholly to the certificates which it held under a valid pledge. If the assignee regarded them as of greater value than the debt for which they had been pledged, or if the interest of the creditors required prompt action, he had authority, under the statute and the orders of the court, to tender performance of the contract of pledge, or to discharge the debt for which the certificates were held. He had the right, perhaps, under the orders of the court, to sell them, subject to the claim of the defendant in error. If he desired a sale of them, and a distribution of the proceeds, or if he doubted the validity of the pledge, he could have instituted an action against the

corporation in some court of competent jurisdiction in Louisiana, and thereby obtained a judicial determination of the rights of the parties. But none of these obvious modes of proceeding were adopted. The receiver and assignee seem to have acted throughout upon the theory that they had the right, immediately upon and by virtue of the adjudication in bankruptcy, to assume control of all property of every kind and description, wherever held, in which the bankrupt had an interest, without reference either to the just possession of others, lawfully acquired prior to the commencement of proceedings in bankruptcy, or to the liens, incumbrances, or equities which existed against the property at the time of the adjudication in bankruptcy. We have seen that such a theory is unsupported by law.''

This case clearly holds that the assignee in bankruptcy, who evidently had as great an interest in the certificates there involved, as the respondent here has in the contracts of sale, was not entitled to the possession of the certificates, nor could he maintain an action of trover for their conversion, until the indebtedness for which they were pledged, as collateral security, had been fully paid and discharged.

In the case of Dome City Bank v. Barnett, 184 Fed. 607, one Tobin, on June 12, 1907, deposited a gold nugget with the bank for safe-keeping, and in October following he pledged the same to the bank as collateral security for advancements made by the bank to him of its full value. On July 22, 1908, Tobin sold the nugget to Barnett, the plaintiff below, who demanded the same, and on defendant's refusal to deliver it, claiming the right to the nugget under and by virtue of the pledge previously mentioned, the plaintiff sued the bank to recover the possession of the nugget. The court below charged the jury that there were two issues presented for their determination: First, who was the owner of the nugget at the time

the bank claimed to have purchased it from Tobin? and, second, that if, at the date when the nugget was sold to the plaintiff, Tobin was the owner thereof, the jury should find for the plaintiff Barnett, but if they did not so find, but found that the bank had purchased the nugget prior to the sale to plaintiff, the verdict should be for the defendant. The jury found for the plaintiff and the bank sued out a writ of error, from the Circuit Court of Appeals. In reviewing the rulings of the circuit court, the Court of Appeals, on page 608, said:

"Error is assigned to the instruction of the court to the jury, which was in substance that the issues were: First, who was the owner of the nugget at the time when the bank claimed to have purchased it from Tobin? and, second, that if, at the date when the nugget was sold to the defendant in error, Tobin was the owner thereof, they should find for the defendant in error, but if they did not so find, but, on the contrary found that the cashier had purchased the nugget prior to the sale to the defendant in error, their verdict must be for the plaintiff in error. This instruction was error, for the reason that it took from the consideration of the jury one of the issues of the case, the issue whether or not the nugget was pledged to the bank in September, 1907. If it was so pledged to the bank, and the bank, on the strength of the security thereof advanced money thereon, which was not repaid, it had a lien upon the nugget, and the right to enforce the same, and it was entitled to the possession thereof, notwithstanding the sale to the defendant in error, which was subsequently made, and notwithstanding that the jury may have found that there was no actual sale of the nugget to the cashier of the bank. The validity of such a pledge is universally recognized by the courts, and there is no requirement in the statutes of Alaska that such a transaction be evidenced by writing. For the error in the instruction,

the judgment must be reversed, and the cause remanded for a new trial.''

There is no material difference between the facts of that case, and this one. There the unanimous opinion of the court was, that where a nugget was pledged to the bank as collateral security for a loan, the bank was entitled to the possession thereof, with the right to enforce its lien, notwithstanding the subsequent sale of the same by the pledgor to the plaintiff below, the defendant in error.

And it should be borne in mind, that in the cases before mentioned, neither the debt nor the pledge was pleaded as an offset; both rested upon the broad ground that the plaintiff could not recover in either case, in any form of action, until the debt was fully paid and discharged.

The case of Roeder Bros. v. Green Tree Brewery Co., 33 Mo. App. 69, was an action for damages for the conversion of nine tubs of butter. On July 8, 1887, the plaintiffs were creditors of one Klasing to the amount of $181.33; a part of this indebtedness was for ten tubs of butter which Klasing had purchased of them on June 10, previously; and nine of these tubs were in cold storage with defendant, for Klasing. The defendant had no right of property in them nor any lien upon them. On said July 8th, the plaintiffs desiring to obtain from Klasing security for their debt, obtained from him the following order:

''7-8-87.

''Roeder Bros.:

''Gents:—

''Out of the 10 tubs of butter you sold me on June 11, '87, I still have on hand 9 tubs which are at the Green Tree Brewery Co's cellar, and which nine (9) I hereby re-transfer to you as collateral security for this bill of $181.33.

FRED KLASING.''

On July 11th, the attorney of Roeder Bros. called on defendant and informed its president that said nine tubs of butter had been pledged to their clients as collateral security for said debt, and requested defendant to hold the butter for them, which was agreed to by the president of the defendant; the attorney of the plaintiffs then telephoned his office boy to bring said written order to the office of the defendant, which the boy did; but before the boy could reach the office of the defendant to deliver it, a deputy sheriff arrived there and levied an attachment upon the butter sued out by the defendant, in aid of a suit brought by it against Klasing. The plaintiffs filed a notice of their claim of the butter under section 2505, Revised Statutes 1879, in which they described their interests therein as "Mortgages." Thereupon the defendant gave bond and retained the butter. A trial was had which resulted in a judgment in favor of the plaintiffs, the pledgee, and against the defendant, the attaching creditor. On appeal in discussing the case, the court, in speaking through THOMPSON, J., used this language:

"On this state of facts, it cannot be assigned for error that the judgment was not supported by substantial evidence, unless the objection is a sound one that the pledge of the butter by Klasing to the plaintiffs was void as being in contravention of Sec. 2505, Revised Statutes. That statute does not apply to such a case as this. What was intended by the plaintiffs and Klasing was not a chattel mortgage where the mortgagor remains in possession, and which is not valid as against creditors without being recorded, but a common law pledge, which becomes effective upon delivery of possession without any recording. The paper purported to 'retransfer' the goods (which the pledgor had previously bought on credit of the pledgee), as collateral security for what he owed them. The word 'retransfer,' as thus used, meant 'redeliver.' That was what was evidently intended, and the paper

therefore gave the plaintiffs the right to the possession of the goods, as against any one not having a lien upon them. Moreover, the debt which it was intended to secure was due and if the paper could otherwise be regarded as a mortgage, this gave the plaintiffs the right of possession.''

That case held that the pledgee under the naked pledge could recover the full value of the goods seized under the attachment and converted to the use of the defendant.

The same doctrine is announced in the case of Gaty v. Holliday, 8 Mo. App. 118. At page 120, the court said:

''The deposit of goods to secure payment of a loan, with power of sale in case of default, creates an interest and right of property in the goods which is not a mere lien. The interest of the pawnee is an interest in the thing itself. Of course, the general property remains in the pawnor. He has such an interest in the thing pledged as he can convey to a third person, but he has no right to the goods without paying off the debt; and until the debt is paid, the pledgee has the whole present interest. [Halliday v. Holgate, L. R. 3 Exch. 302; Donald v. Suckling, 7 Best & S. 783.] And as the pawnee has a special interest and property in the thing itself, it would seem, of course, that he has a like interest and property in its increase in his hands. And Story quotes Pothier (Story on Bail, sec. 287): 'The creditor to whom the thing has been given in pledge has not the right to use it, nor, if the thing is fruitful,' to apply the fruits of it to his own profit; but he ought to collect the fruits in payment and deduction of the debt, and he must render an account of the increase to the debtor.' ''

The same rule is announced in the case of Howell, Jewett & Co. v. Caryl & Co., 50 Mo. App. 440. At page 449 the court said:

"If the evidence does not show a valid mortgage, either at common law or under the statute, it does show a valid common law pledge. [Roeder Bros. v. Brewery Co., 33 Mo. App. 49; Conrad v. Fisher, 37 Mo. App. 352.] The plaintiffs were placed in possession of the property by Lund, to secure their debt. This is not questioned. Neither Lund nor any other creditor of his had a right to the possession of the property, as against plaintiffs, until their debt was satisfied. [Roeder v. Brewery Co., 33 Mo. App. 69; Allgear v. Walsh, 24 Mo. App. 134.] So it is of no consequence whether the mortgage was properly admissible in evidence or not, since, upon the undisputed facts, the plaintiffs were rightfully in possession of the property as a security which had been pledged to them by Lund for their debt, and the title thus acquired was sufficient to support this action. [Dolan v. Van Demark, 35 Kan. 305; Swiggett v. Dodson, 38 Kan. 706; Ryan v. Tudor, 31 Kan. 366.]"

In the case of Tennent v. Union Central Life Insurance Co., 133 Mo. App. 345, the insured and owner of a policy of insurance pledged it to the company as collateral security for the payment of money borrowed by him from it, and by a contract previously entered into between them it was provided that, in case of default of payment to the company, the pledgee might sell the policy at public or private sale. Default was made, and the company sold the policy at auction in the office of the company without public notice, when no one was present except the employees of the company, and it was bid in by the company. Thereafter the insured died, and the beneficiary in the policy sued the company to recover the amount of the policy. There were quite a number of legal propositions presented to and decided by the court, but the only ones material to this case are those which relate to the pledge of the policy, and the rights of the pledgor and pledgee to sue

thereon. Regarding those questions the court on page 357 uses this language:

"It is true, generally speaking, that the pledgee of a chose in action has the right to enforce it when it becomes due, and that such right is exclusive; that is, the pledgor cannot maintain the suit alone. The pledgee thus suing on or for the value of the pledge, occupies the relation of trustee to the use of the pledgor, and recovers, if at all, as such; the obligation being to apply so much of the recovery as is necessary to the extinguishment of the debt, and hold the remainder in trust for the pledgor. [Norton v. Warner, 3 Edw. Ch. (N. Y.) 106; Dickey v. Porter, 203 Mo. 1; 22 Am. & Eng. Ency. Law (2 Ed.), 894-5-6; 6 Ency. Pl. & Pr. 639, 640, 641; Jones on Pledges (2 Ed.), secs. 429, 430.] At common law, the assignee of a chose in action could sue thereon only in the name of his assignor, while in the courts of equity the assignee, being the real party in interest, could maintain a suit in his own name. The obvious purpose of our code was to abolish mere fictions of law and forms of procedure to the end of affording a simple and adequate remedy touching the substance in every case instead. It was therefore provided in Sec. 539, Revised Statutes 1899, that there shall be but one form of action for the enforcement of private rights; and by section 540, that every such action shall be prosecuted in the name of the real party in interest, except as otherwise provided in exceptional cases, which are unimportant here. A contract of pledge is a legal obligation, effectuated by the pledgor depositing with the pledgee personal property as security for an indebtedness or other engagement, with an implied power of sale in the pledgee on default. In such circumstances, the pledgor remains possessed of a general ownership in the property pledged, subject only to the lien of the indebtedness existing in favor of the pledgee. [Ottumwa Nat. Bank v. Totten, 114 Mo. App. 97; Richardson v. Ashby, 132 Mo. 238, 246;

Brewster v. Hartley, 37 Cal. 15, 25; 22 Am. & Eng. Ency. Law (2 Ed.), 864, 865.] Although a suit may be prosecuted and a recovery had thereon by the pledgee alone, it is entirely competent, and in fact it comports precisely with the spirit of the code, for such suit on the instrument pledged to be prosecuted in the name of both the pledgor and the pledgee against the obligor in the instrument, to the end that all parties interested therein shall be before the court, that the several rights of the obligor in the instrument, the general owner thereof, and the lienor thereon, may be fully determined and finally precluded by the judgment. Indeed, it has long been settled that one who has assigned an obligation or lien as collateral security, may, if he has an interest in it, maintain an action for its enforcement, and that the assignee is a necessary party to such action. [Dickey v. Porter, 203 Mo. 1, 22.] There are remarks to be found in Dickey v. Porter, supra, which would seem to extend the doctrine quite beyond what has been said in this opinion. An attentive consideration of the facts of that case, however, will disclose that it was one of exceptional circumstances, and in view of the fact that the indebtedness for which the taxbill therein pledged had been paid prior the trial, the judgment of the court given thereon is obviously sound. In that case, the suit was by the pledgor to enforce the lien of a special taxbill held in pledge at the time the suit was instituted. The indebtedness for which the taxbill had been pledged was discharged, however, before the trial, and upon full consideration the court declared the pledgor might maintain an action on the obligation, notwithstanding the pledge was outstanding at the time the suit was instituted. The question turned upon the proposition that the pledgor, notwithstanding the pledge at the time of the institution of the suit, was the real party in interest when judgment was given, and that all interests in the taxbill were then before the court and in judgment. It

is no doubt true that where a suit on a pledged instrument is prosecuted by the pledgor alone, without joining the pledgee, and against a third party, who is obligor in the pledged instrument, the recovery, if at all, would be perforce of the pledgor's general ownership in the pledge, and possibly to the exclusion of the pledgee's interest, for the pledgor is not, under those circumstances, a trustee executing the trust to the benefit of the pledgee, as is a pledgee to the use of the pledgor when he recovers on the pledge. In those circumstances it is quite probable that the third party, the obligor in the pledged instrument, might possibly be subjected to the annoyance of two suits, for there is no doubt as to the right of the pledgee to sue thereon. When we look to the obvious purpose of our code provision commanding suits to be prosecuted in the name of the real party in interest, it is manifest no such result could be entailed by sustaining the present action; for here, while the pledgor alone is plaintiff. the pledgee, obligor in the instrument pledged, is defendant, and therefore all parties in interest are before the court as parties to the record. The judgment given by the court on such a record essentially disposes of all interests in the controversy and thus meets and satisfies the fundamental notion involved in the code provision respecting the real party in interest. We are not disposed to say that prior to the payment of the debt the pledgor alone, without joining the pledgee, can maintain a suit on the obligation of the pledged instrument against the maker thereof, who is a third party, unless the rule of Dickey v. Porter, supra, compels it. That case, as we understand it, does not go to the extent of asserting the doctrine mentioned; and if it did, it would not be precisely in point here, for the facts under advisement in the present instance do not present the question suggested; that is, the obligor in the instrument sued upon is not a third party. The court is of the opinion, however, that it is entirely proper,

upon the peculiar facts presented by this record, for the pledgor to maintain this suit against the pledgee on the policy, and this, for the reason that, while both the pledgor and pledgee are not parties plaintiff, they are both parties to the record and the judgment of the court will essentially determine as between them all interests in the obligation contained in the pledged instrument, the indebtedness for which it was pledged, and the relative rights of the parties in the fund arising from a recovery on the pledge. It is certain that both pledgor and pledgee could not join as plaintiffs in this action against the defendant insurance company, who is pledgee and at the same time obligor in the instrument it is holding in pledge, for the reason the defendant could not sue itself; and were the defendant pledgee a coplaintiff to the action, there would be no defendant against whom to prosecute the suit. Although the pledgor is not possessed of the entire interest in the pledge, the obligor in the instrument pledged being the pledgee thereof, and at the same time defendant in the action, we are persuaded that the spirit of the code requiring suits to proceed in the name of the real party in interest; that is, to the end that all parties in interest shall be before the court; is fully satisfied in this instance, and therefore sustain the action in the form it has assumed. Dickey v. Porter, 203 Mo. 1, is at least authority for the principle invoked.''

That case distinctly and clearly holds that ordinarily before the payment of the debt, the pledgor cannot even sue the obligor in the assigned or pledged contract, without joining the pledgee with him in the suit, much less has he the right to sue the pledgee thereof.

Instead of the case of Dickey v. Porter, 203 Mo. 1, being an authority in favor of the proposition, that the pledgor, prior to the payment of the debt, may sue the obligor in the pledged contract or cause of action, it is

directly to the contrary, for the reason that the ruling in that case is expressly based upon the fact that the debt, for which the taxbill was pledged as security, was fully paid off and discharged before the judgment was rendered in favor of the pledgor.

The case of Tennent v. Union Central Life Insurance Co., the case we are discussing, is the only case that I have been able to find which lends any semblance of authority in support of the position of counsel for respondent, in the case at bar. For the sake of emphasis, I recopy the following language of that court, found on page 360.

"The court is of the opinion, however, that it is entirely proper, upon the peculiar facts presented by this record, for the pledgor to maintain this suit against the pledgee on the policy, and this, for the reason that while both the pledgor and pledgee are not parties plaintiff, they are both parties to the record and the judgment of the court will essentially determine as between them all interests in the obligation contained in the pledged instrument, the indebtedness for which it was pledged, and the relative rights of the parties in the fund arising from a recovery on the pledge. It is certain that both pledgor and pledgee could not join as plaintiffs in this action against the defendant insurance company, who is pledgee and at the same time obligor in the instrument it is holding in pledge, for the reason the defendant could not sue itself; and were the defendant pledgee a coplaintiff to the action, there would be no defendant against whom to prosecute the suit. Although the pledgor is not possessed of the entire interest in the pledge, the obligor in the instrument pledged being the pledgee thereof, and at the same time defendant in the action, we are persuaded that the spirit of the code requiring suits to proceed in the name of the real party in interest, that is, to the end that all parties in interest shall be before the

Helm v. Albers.

court, is fully satisfied in this instance, and therefore sustain the action in the form it has assumed.''

From this language it will be seen that the court held that the insured, the owner and pledgor of the policy, could maintain an action against the insurance company, the insurer and pledgee of the policy, without first paying the note for which it was pledged as collateral security. That case differs from the case at bar, in this: There the contract of insurance, which was evidenced by the policy issued, also embodied an agreement to lend a certain amount of money to the insured on his note, to be secured by the hypothecation of the policy as collateral security for the payment of the money to be so loaned. So under those conditions the insurance of the policy and the subsequent loan of the money and the pledge of the policy as collateral security therefor, all constitute but one and the same transaction, both bottomed upon the same consideration, and in the very nature of the case, when the company became possessed of the policy, as pledgee, under the contract, and refused or failed to sell it, as therein agreed, but converted it to its own use, then I can very readily see how a court of equity, upon broad principles of right and justice, and probably in an action at law, the rights of the respective parties might be adjusted by way of counterclaim, offset or recoupment, as the case might be. That is the substance of the ruling in that case; and while no authorities are cited in support of the rule there stated, yet I think the doctrine there announced may be said to fall within well recognized legal principles.

I can also imagine a case where an equitable setoff or counterclaim might be properly resorted to, which does not grow out of the same contract; for instance, where the pledgee is insolvent, great injustice might be done the pledgor, if he should be required to observe the ordinary rules of law governing pledges, that is, to first pay the debt, for which the collaterals were

pledged, and then require him to resort to law to collect the debt due him from the pledgee. But in such a case, and in a case like that of Tennent v. Insurance Co., supra, the duty rests upon the pledgor to bring his suit, in the first instance, along those lines, with that idea in view. In such a case the plaintiff can no more sue at law and receive equitable relief, than he can do so in any other case. This is elementary, and there is no authority to the contrary.

In the case at bar, there is no attempt whatever, on the part of the pleader, to state a cause of action under either of those rules, or to invoke any form of equitable relief; here the cause of action stated is an ordinary action at law, seeking to recover damages arising from a breach of contract to sell ninety-five thousand bushels of wheat.

But in the case at bar, we have no such facts as existed in the Tennent case, or in the case supposed; nor have we the necessity to resort to courts of equity or to any other court for that matter, to adjust the rights of the parties to the pledge in question, which is an entirely different and independent transaction from the sale of the wheat, which was made a year or more before that time; nor is it alleged or shown that the appellant was insolvent.

In addition to the authorities before considered and those cited therein, we might cite many more of like import; but owing to the fact that there are none supporting the position taken by counsel for respondent, we will content ourselves with short comments upon the following cases.

In the case of Reynolds v. Louisville, New Albany & Chicago Railway Co., 143 Ind. 579, the Supreme Court of Indiana held that where a contract had been assigned or pledged as collateral security for the payment of a debt, the assignor could not maintain an action upon it against the contractor, on his own account, even after notice to the assignee or pledgee to

institute suit thereon. This case is in harmony with the rulings of many respectable courts of this country, yet it goes further than do the majority of them. However, neither it nor any of them go to the extent of holding that the pledgor can at law, sue the pledgee for the possession of the pledged securities, nor for the recovery of their value, before the debt for which they were pledged has been paid and discharged. All the authorities agree upon that point; the diversity relates to the right of the assignor to sue the obligor in the pledged securities, some of them holding that he may do so, while others hold to the contrary; but all unite in holding that neither the pledgor nor his assignee can sue the pledgee for the possession of or the value of the pledged goods or securities before the debt for which they were pledged as security, has been fully paid and discharged, nor for damages arising thereunder.

To the same effect is the case of Ware v. Russell, 57 Ala. 43. It was there held that "a party holding a collateral paper, as long as the principal debt remains unpaid, is so far clothed with a right to it, that the debtor placing it thus in pledge cannot recover it. The holder may collect it, or otherwise make it available for the payment of the debt for which it is the security."

The same principle is announced by Judge BREWER, in the case of Best v. Crall, 23 Kan. 482. In that case the payee in a negotiable promissory note, before maturity, indorsed and delivered it to a bank, as collateral security for the payment of a buggy purchased at the time by the plaintiff. Before maturity, but after the indorsement and delivery of the note to the bank, without knowledge thereof, the maker of the note paid it to the payee, and took a receipt therefor. The court held that the payment did not discharge the note, or defeat a right of action therein. The opinion is based upon the fact that the pledge of the note to the bank as collateral security was, for all intents and purposes,

the same as if the note had been sold outright to the bank, and negotiated in the ordinary course of business. The pledgee, the bank, thereby acquired such a title to the note that the payee therein could neither sue the maker thereon, nor receive from him voluntary payment thereof, much less could the payee have sued the pledgee, the bank, for the possession of or for the value of the note, before the debt for which it was pledged had been paid.

There are many other cases in the same and in different States announcing the rules of law before stated. They differ not as to the right of the pledgor to sue the pledgee before the debt is paid, for which the pledge was given; all of them agree in holding that he can not do so. A number of them even go so far as to hold that the pledgor can not even sue the maker of collateral deposited, without first paying the debt which it was deposited to secure.

The majority opinion concedes that where specific personal property is pledged as security for a debt, the pledgee cannot be sued by the pledgor, for the recovery of the possession of, or the value of the property before he pays the debt, for which the pledge was made. Yet in the case at bar, it is held that the principle does not prevail where the subject of the pledge are choses in action, such as bills, bonds, notes, contracts, etc. I respectfully submit that the authorities neither recognize or make any such distinction, nor is there any reason for such a distinction. Both stand precisely upon the same footing, that is, in so far as the pledgee is concerned.

After a careful review of this entire record, I am unable to discover therein any law, equity or morals on the side of the respondent. Evidently this suit was brought in the form it was for the purpose of coercing the appellant to waive the claim of illegality of the contracts as a defense in the case. That is neither right nor just, and it should not be tolerated by a court

of justice. Certainly such conduct finds no support in the laws of the land.

The books are full of cases recognizing the same principle of law, when applied to other lines; for instance, before a mortgagor will be permitted to sue for the recovery of the possession of mortgaged property, real or personal, or for the value thereof, except in cases for equitable redemptions (and this as akin to the principle of equity setoff previously mentioned, regarding the right of a pledgor to sue pledgee for the possession of, or for the value of personal property pledged as collateral security for a debt), he must first pay the mortgage debt, or tender the amount due. No court in Christendom has ever held to the contrary. [McGlothlin v. Hemery, 44 Mo. 350; Perrine v. Poulson, 53 Mo. 309; Ferguson v. Soden, 111 Mo. 208.]

As previously stated there is no authority authorizing such a suit as this, and if this is to be the first precedent for such, then I have but this to say:

It has established a precedent in an unholy cause, and for the purpose of unlawfully oppressing the rights of one, and promoting the unlawful claims of the other.

For the reasons stated, I dissent from the majority opinion.

## ON REHEARING.

PER CURIAM.—The motion for a rehearing is overruled and appellant having delivered the two promissory notes referred to, cancelled as directed in the opinion for the purpose of a credit, it is ordered that the amount of said notes, principal and interest, to-wit, $8371.77, be credited on the judgment as of May 28, 1912. Reference is here made to the evidence of the surrender and the terms thereof signed by attorneys for appellant and filed in this court May 28, 1912. *Woodson, J.,* dissents.