T. J. GRACE, H. A. ARNOLD and E. A. MURRAY, APPELLANTS, v. GEORGE KOPPEL, RESPONDENTS.—30 S. W. (2d) 182.

Kansas City Court of Appeals. June 16, 1930.

*Wm. B. Dickinson, Alfred D. Hillman* and *Martin B. Dickinson* for appellants.

*Reinhardt & Schibsby* for respondent.

BOYER, C.—This is a suit to enforce the collection of a special tax bill issued by the city of Kansas City, Missouri, against the property of defendant to pay for street paving in a total amount of $1131.96.

The evidence shows the tax bill was No. 16, issued under ordinance No. 49833, to the W. C. Mullins Construction Company, a corporation, the contractor doing the work. It was issued June 19, 1925, and was payable in four equal installments of $282.99; the first installment being due June 30, 1926, and the remainder of the installments due in one, two, and three years after the due date of the first installment.

On July 22, 1925, defendant paid to the Mullins Company on said tax bill the sum of $831.99. Prior to that time, defendant had some conversation with the president of the company and it was agreed that he should have two per cent reduction for cash payment and that he should pay three-fourths at that time and the remainder later. Some time·in the fall of the year 1926, defendant called at the office of the Mullins Company to settle the remainder of the bill and was informed by the cashier or bookkeeper, named Madden, that the bill had been misplaced, but that he would get it and to come in later, and thereafter was put off from time to time with the excuse that the bill could not be found; and thereafter, on January 21, 1927, the defendant met Madden in the of-

fice of the city treasurer at Kansas City, for the purpose of settlement. Defendant had advised with the city treasurer who directed him to bring some representative of the company to the office. Madden accompanied defendant to the office of the city treasurer and there made the statement that he could not get the bill, and when asked whether he would make an affidavit that it was lost said that he would, but instead of making the affidavit he signed a statement which was endorsed upon the special tax record in the city treasurer's office, which reads as follows:

"This is to certify, That we are the owners of, and have received payment in full on tax bill 16 Inst. in full Street Pave 46th St., Ord. 49833. This satisfaction is made at the request of owner, the tax bill having been lost. By S. S. Madden, Cashier. Attest. M. E. Carey. Date Jan. 21, 1927."

Defendant then paid the further sum of $243.38 to Madden. All payments made by defendant were received by the Mullins Company. It was shown by defendant, over the objection of plaintiffs, and by the testimony of Mr. Carey, the city treasurer, that it had long been a custom in his office to make similar entries upon the payment of tax bills which had been lost. This custom had prevailed for at least seventeen years, and the city treasurer had a rubber stamp prepared for that purpose and the endorsement on the special tax record was done by use of the stamp and by filling in the blanks to conform to the facts.

The evidence further disclosed that on December 1, 1924, the W. C. Mullins Construction Company entered into a trust agreement with the Central Trust Company of Illinois as trustee. This contract covers over forty pages of the record. The main object and purpose of it was to provide means for securing bonds of the Construction Company in a large amount, by the assignment, transfer, and deposit with the trustee of special tax bills issued by Kansas City. The company was required to deposit with the trustee 112½ per centum of the total principal amount of the bonds from time to time outstanding. This percentage was to be maintained either by the deposit of the face amount of tax bills, or tax bills and cash. Under the terms of the trust agreement, one H. M. Cammack was to approve the tax bills so received. $150,000 of a given series of bonds was authorized, issued, and sold under authority of the Mullins Company, by H. M. Cammack. Part of the proceeds were deposited with the trustee to be held as a cash deposit with tax bills to secure the payment of the bonds.

Under date of July 10, 1925, in pursuance to the trust agreement, the Mullins Company transmitted a large amount of tax bills to the trustee, including the tax bill in suit. The tax bill bore an assignment executed by the construction company. The blank

form of assignment was not filled up, but merely signed in blank as printed. The transfer and deposit of this tax bill, according to the dates shown, was made twelve days before the defendant made any payment to the construction company. It remained in the hands of the trustee until August 31, 1928, on which date, on account of the default of the construction company under the trust agreement, the trustee sold and assigned all of the tax bills remaining in its hands, including the one in suit, which had been deposited with it, to secure the payment of bonds of the construction company. The trustee reported the sale to the company and further notified it that there was then on deposit with the trustee for payment to the holders of the bonds a sum equal to $44.34 for each $100 of principal amount of said bonds.

The tax bill in suit, together with others, was sold and transferred by the trustee to plaintiff Grace, and it is stipulated by the parties to the suit that in the purchase of this and other tax bills Mr. Grace was acting for himself and the other plaintiffs mentioned in the petition, and that plaintiffs are now the owners of whatever rights they may have acquired under said purchase.

The first knowledge that defendant had that the plaintiffs or any one else claimed any right under the tax bill was obtained by him when he received a letter some time in September, 1928, from an attorney in Chicago, demanding payment of the bill. No notice had been served upon him of the assignment, nor filed in the office of the city treasurer.

Other facts in evidence will be referred to in a consideration of the points raised on appeal.

The petition is in usual form, describing the procedure and authority for, and the issuance of the tax bill, the receipt thereof by the construction company, ownership by plaintiffs, the property against which it was issued, and stated that defendant owns or is interested in the property. The tax bill is made a part of the petition.

The answer was a general denial of all allegations except facts admitted. It further recites that defendant paid the construction company the sum of $831.99 on July 22, 1925, upon said tax bill, and on January 21, 1927, paid the remainder thereof in full in the sum of $243.38; that on said date the records were satisfied in the office of the city treasurer of Kansas City, Missouri, and the satisfaction thereof attested by the city treasurer; that prior to the last payment made by defendant, he had no knowledge of the assignment of the tax bill; that no notice of assignment had been given at the office of the city treasurer; and that in fact no assignment of the bill had been made by the construction company. The answer further alleged that the construction company was au-

thorized by the holders of the tax bill to collect the money due thereon and transmit the proceeds to the holder, and that in pursuance of such authority the construction company collected the money due on the bill as the agent of the holder.

The reply was a general denial except such facts as were admitted in the petition.

The case was tried to the court without a jury (no mention being made thereof) and submitted without declarations of law or request for findings of fact and conclusions of law stated separately.

The court first entered a judgment which contained five special findings of fact and ordered and adjudged that plaintiffs take nothing; that the tax bill be cancelled and marked paid, and that the property be discharged from any lien by reason of it. Thereafter, the court set aside said judgment and re-entered same, omitting the findings of fact, but making a general finding of the issues for the defendant. From this judgment plaintiffs duly appealed.

Appellants contend that the judgment should have been for the plaintiffs because (1) defendant did not show a valid release on the record, (2) and did not show payment to the owner of the tax bill, (3) defendant failed to show that the Mullins Company was the agent of the trustee for the collection of the tax bill, and (4) that plaintiffs' title was perfect. Appellants also assign error in the admission of testimony of the city treasurer concerning a custom for the release of tax bills said to be lost.

### OPINION.

As preliminary to a discussion of points raised on appeal, it is suggested by appellants that this is an action to foreclose the lien of a special tax bill, consequently a proceeding in equity, and that disposition of the case on appeal will be made accordingly. The authority cited is Bates v. Comstock Realty Co., 306 Mo. 312. Upon an examination of this case, and others, it is apparent that the statement of appellants must be qualified. A suit to enforce a special tax bill is not always a proceeding in equity. It is usually an action at law. The exception arises where the city charter, or the statute, provides no adequate method for the enforcement of the lien of the tax bill, or where special circumstances call for equitable relief. [Schmidt v. Pitluck, 26 S. W. (2d) 859, 861, and cases there cited.]

From an examination of the provisions of the charter of Kansas City, referred to by appellants and by respondent, it appears that specific and adequate procedure is designated for the collection of special tax bills issued to pay for public improvements. Reference

is made to the city charter of 1908, sections 22 and 24, of article 8. Appellants refer to these sections for the purpose of calling attention to the provision made for the payment of a tax bill to the city treasurer, the duty of the treasurer in the premises to pay out the money to whom the bill was issued or the assignee thereof "only on delivery to the city auditor of such special tax bill duly receipted in full;" and also to show the special declaration that every such tax bill and lien thereof shall be assignable and the assignee thereof may sue in his own name. Section 24 above referred to makes full provision for the collection of a tax bill. It provides who may be made parties defendant for the purpose of foreclosing the lien, that suit may be brought in the name of the owner or assignee of the bill, that in such suit "judgment shall be special that the plaintiff shall recover the amount found due, including interest, together with costs, to be levied and made off of the land described in the tax bill, and a special execution shall issue to sell the land to pay any such judgment, interest and costs." It is further provided that suit may be brought in any court of competent jurisdiction, and that when the amount involved does not exceed a stated sum, suit may be brought either in the circuit court of Jackson County, or in the municipal court of Kansas City, and in event the judgment is rendered in the municipal court a transcript thereof shall be filed in the office of the clerk of the circuit court, duly docketed, recorded, and indexed as a judgment of that court; "whereupon, a special execution may issue out of that court the same as if the judgment had been rendered in that court." It is also provided: "Proceedings on special executions on judgments on special tax bills shall, as herein provided, including the making of deeds to purchasers, conform as far as practicable to proceedings on other special executions from the circuit court." Provision is also made for the issuance of execution, sale, right of redemption and the execution of a deed. Practically the same provisions are covered by the charter of Kansas City adopted February 24, 1925, as shown by sections 300, 304, 305, 306, 307, 308, and 309 of article 8.

In view of the special provisions made for the enforcement of the lien of a tax bill by the charter of Kansas City, and under the authorities above referred to, we do not deem this case a proceeding in equity to be disposed of as an appeal from a judgment in equity. There is not sufficient in the record to show that both parties treated the case as one in equity and adopted that theory of trial, although counsel for both parties in the briefs make reference to the subject of deference which may be given to the judgment of the trial chancellor. The answer did not

state any ground for affirmative relief, but the judgment gives such relief by ordering the bill cancelled.

We think the case must be disposed of as an appeal from a judgment in an action at law, and that if there is any theory upon which the judgment of the trier of the facts can be sustained that theory will be adopted. In other words, if there is sufficient evidence to support any of the special defenses pleaded in the answer, the defendant should prevail; otherwise the judgment should be reversed.

The defense of payment to the owner of the tax bill in question cannot be maintained under the law and the evidence in this case. Before payment to the contractor the tax bill had been duly and legally assigned and pledged, and was then in possession of the pledgee as security for the debt of the contractor. The payment amounted to no more than payment to a stranger unless it should result that the original payee owned some interest in the tax bill over and above the amount required to pay the debt. In this case it resulted that the tax bill, together with other security, was inadequate to pay the debt. The only interest which the original owner had or could have in the tax bill was subject to the right of the assignee or pledgee to apply the proceeds of the bill to the purposes intended. To hold that the defendant in this case could discharge the lien of the tax bill, by the payment made under the circumstances shown in evidence, would place in him the absolute power to destroy the value of the pledge of his obligation in the hands of the pledgee; and would, in effect, deny that a tax bill could be assigned or pledged effectively by means of a written assignment and delivery of the bill. Such is not the law. There is and can be no question in this case as to the assignability of the tax bill that it was duly and legally assigned and pledged, both by writing and delivery, and duly and legally sold and transferred for value to the plaintiffs in this case.

The authority relied upon by respondent to support his contention that the original payee of the tax bill was still the *owner*, and could maintain a suit upon the tax bill and receive payment is Dickey v. Porter, 203 Mo. 1. This case does not aid defendant. What is said must be viewed in the light of the facts there presented. Plaintiff had discharged his debt and was in possession of the tax bill at the time of the trial.

The hardship that may fall upon defendant in event that he is required to pay the assignee of the bill could have been avoided if he had pursued the course indicated in the charter by paying the amount of the bill to the city treasurer. This would have resulted in a realese of the lien created by the tax bill. No one would have received the money from the city treasurer without

the production and satisfaction of the tax bill. This course he did not follow, but elected to make payment to a person who had no interest in the bill and could not release it. Whether this was due to his own neglect or to the fact that he was grossly misled and deceived (which we think he was), it cannot have the effect of destroying the right of the true owner of the bill to make collection. When the defendant elected to pay as he did without receiving the tax bill, he did so at his own peril.

The endorsement made upon the special tax record in the office of the city treasurer by the agent of the contractor, attested by the city treasurer, amounts to no more than a receipt for the money and was not an effective release of the tax bill. It was not such a release as the city treasurer was authorized to endorse and did not conform to any method of release prescribed by the charter. Section 24, Article 8, supra. It is inconceivable that evidence of a custom of releasing tax bills said to be lost in this manner would destroy the right of an assignee of such a bill. We think that such evidence was improperly received and is of no weight or value to the defendant in this case. It is clear to us that there was no such payment or release of the bill as to foreclose the right of the pledgee and of the plaintiffs in this case.

But respondent contends that even though the payment to the Mullins Company as owner of the bill was insufficient to discharge the debt, nevertheless the Mullins Company received payment as the agent of the trustee. On this proposition defendant must carry the burden of proving an actual agency. It is one of his affirmative defenses. [Ferguson v. Dalton, 158 Mo. 323.] The only proof in the record upon the subject is the testimony of the witness Madden who said that he was general manager for the Mullins Company (but was shown by other evidence to be merely a bookkeeper), and that the authority to collect tax bills was verbally given by H. M. Cammack. The witness said that Cammack represented the trustee. This was a mere conclusion. There is no evidence that he represented the trustee. There is no showing of any character that Cammack was ever authorized to represent, or to act for, the trustee in any capacity whatever other than to approve tax bills offered by the Mullins Company. It is further noted, and the evidence shows, that Cammack was the actual representative and agent of the Mullins Company in the sale of the bonds, for the payment of which the tax bills were pledged. This witness admitted that he said the tax bill had been lost, and then said he wasn't sure about it; that he did not know just where it was; and when asked if he did not know that the tax bill had been sent to the Central Trust Company on July 10, 1925, evaded by saying: "I didn't send it," and finally admitted that

he heard it had been sent and that he probably did know; and that he had heard nothing further about it since. There is some evidence of the transmission of money from the Mullins Company to the Central Trust Company for the payment of the expenses of executing the trust agreement; and to maintain the required deposit; and also testimony in reference to the collection of tax bills by the Trust Company as trustee, and that the money so sent to the trustee was received from the city authorities of Kansas City. Witness said: "George Oswald usually remitted this from the auditor's office." The testimony of this witness is evasive, confusing and contradictory, and falls far short of being any substantial proof of the existence of an actual agency on the part of the Mullins Company for the collection of the tax bill. There is no reliance placed upon an apparent agency and that question is not in the case.

The burden was upon defendant to establish one of his affirmative defenses and in this he has failed. There is no substantial evidence to support a judgment for defendant upon any of them. Hence plaintiffs should have won a decision on the state of the proof.

From our view of the case, we do not feel at liberty to dispose of it as a proceeding in equity. It results that the judgment should be reversed and the case remanded. The Commission so recommends. *Barnett, C.,* concurs.

PER CURIAM:—The foregoing opinion by Boyer, C., is hereby adopted as the opinion of the court. The judgment is reversed and the case remanded. All concur, except *Trimble, P. J.,* absent.